Docket No. 96198–Agenda 2–November 2004.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LEON BLAIR, Appellee.

Opinion filed June 3, 2005.

JUSTICE FITZGERALD delivered the opinion of the court:

As defendant Leon Blair and two friends were walking towards an intersection on the south side of Chicago, they encountered a car driven by Darryl Mims. After harsh words were exchanged, defendant pulled a .357 Magnum from his waistband, said “ball game,” and killed Mims. A jury convicted defendant of first degree murder and the trial court imposed a sentence of 55 years’ imprisonment. Following an unsuccessful direct appeal, defendant filed the instant postconviction petition, blaming his lawyers for his first degree murder conviction. The trial court summarily dismissed the petition based on 
res judicata
 or waiver. The appellate court reversed, holding that both 
res judicata
 and waiver are not permitted bases for summary dismissal under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1 
et seq
. (West 2000)). 338 Ill. App. 3d 429, 431. We granted the State’s petition for leave to appeal. See 177 Ill. 2d R. 315(a). We find the legislature intended to allow a judge to summarily dismiss petitions where facts ascertainable from the record reveal the petition’s claims have already been decided, waived, or forfeited. We therefore reverse.

BACKGROUND

At trial, the following evidence was adduced. On June 25, 1995, 18-year-old defendant, Leon “Little Tray” Blair, acted as a security “look-out” at a Black Disciples gang picnic on the south side of Chicago. After leaving the picnic at either 12 p.m. or in the afternoon, he began “journeying” around the neighborhood with fellow Black Disciples John McKenzie and Marcus Wright. According to Wright’s testimony on cross-examination by defendant’s counsel, the trio had been drinking beer and gin, and defendant had been smoking marijuana. As daylight waned at 8:45 p.m., defendant, McKenzie, and Wright approached a three-way intersection at 73rd Street, Ellis Avenue, and South Chicago Avenue. They encountered Darryl Mims as his red Oldsmobile pulled up to a stop at the intersection. They asked Mims the price of his vehicle and Mims replied, “$3,500.” Defendant was angered at the high price and said, “That’s a robbery without a gun.” Mims then “disrespected” defendant, so defendant told Mims, “I am a Black Disciple. My name is Little Tray, and you better show some respect for me.” Mims then called the 5-foot-5-inch, 150-pound defendant a “little motherfucker,” further angering defendant.

Assistant State’s Attorney Anne Lorenz testified that in an interview she conducted with defendant, defendant told her that he saw Mims reach his right hand over the front passenger seat toward the glove compartment. Defendant did not see a gun on Mim’s person or in the car. Lorenz testified that defendant orally told her that he “extended his arm into the car,” and that “before he pulled the trigger, he said, ‘ball game’ to the driver, which means ‘it’s over.’ ” Defendant, however, crossed this statement off the written statement that Lorenz prepared. At trial, defendant admitted that he shot Mims. Defendant further testified, however, that Mims reached toward the glove compartment with his right hand, which led defendant to think that Mims was retrieving a weapon. Wright disputed this, testifying that after words were exchanged between Mims and defendant, he heard defendant say “ball game” and saw defendant lean toward the inside of the vehicle and fire a shot at Mims. Also according to Wright, Mims was sitting back comfortably in his car seat with his right hand on the steering wheel. Eyewitness Taron Cain testified that he stopped his car at the intersection when he saw two men talking to an occupant of the car which fit the description of Mims’ car. He saw defendant walk or jog up to the car and shoot the occupant. After the shooting, the three men ran away as Cain exited his car to assist Mims. Mims died approximately two weeks later.

After leaving the scene, defendant threw the gun into the water by Rainbow Beach and later went to the residence of Cassandra Harris, the mother of two of defendant’s children. Harris testified that she, Wright, and defendant were on her porch that night. She testified that defendant stated, “[McKenzie] told him to stick that nigger.” McKenzie then arrived on the porch, and defendant said to McKenzie, “Man, you told me to stick that nigger.” At trial, after first denying that he used those words, defendant admitted that he said them. Defendant also admitted at trial that he never told the group on the porch that he shot Mims because he was in fear for his life.

Defendant was charged in a two-count indictment with the first degree murder of Daryl Mims. 720 ILCS 5/9–1(a)(1), (a)(2) (West 1992). After defendant’s motion to suppress was denied, the case proceeded to a jury trial. The jury rejected defendant’s second degree murder argument premised on defendant’s unreasonable belief in the necessity for self-defense. Instead, the jury found defendant guilty of first degree murder.

Defendant’s trial counsel filed a motion for a new trial alleging that the evidence was insufficient and that defendant was denied a fair trial. In addition, defendant filed a separate 
pro se
 motion for a new trial alleging that during the trial his attorney became physically ill and should have asked for a continuance; and his attorney’s illness may have caused her to inadequately represent him.

At the sentencing hearing, the trial court offered defendant’s counsel an opportunity to be heard on her motion, but counsel waived argument. The trial court then offered defendant an opportunity to be heard on his 
pro se
 motion. Defendant responded: “I waive argument.” The trial court then denied both motions, stating, 
inter alia
, “As to defendant’s motion for new trial, based upon the fact his Attorney was physically ill and did not ask for a continuance in this matter, I find there is no merit whatsoever. Counsel did an excellent job in representation of this defendant. This motion will also be denied.”

The trial court received evidence in mitigation and aggravation, including testimony from the mother of the victim and letters from four teachers who helped defendant obtain his GED while he was incarcerated. The trial court subsequently sentenced defendant to 55 years’ imprisonment.

Defendant filed a notice of appeal and the Cook County public defender was appointed to represent him on appeal. Attorneys in the public defender’s office reviewed the record and concluded that there were no issues of merit warranting argument on appeal. Accordingly, the public defender filed a motion for leave to withdraw as appellate counsel and a brief in support of the motion pursuant to 
Anders v. California
, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967). Defendant filed a 
pro se
 response to the motion to withdraw, arguing that: (1) his trial counsel rendered ineffective assistance by neglecting his case because she was “obviously medicated” during trial due to an illness making her “often incoherent”; (2) his trial counsel was ineffective for failing to object to evidence regarding his gang involvement, which the trial court improperly admitted at trial; (3) his trial counsel was ineffective for failing to interview potential character witnesses to testify at the sentencing hearing; (4) his appellate counsel labored under a conflict of interest because both trial and appellate counsel were employed at the public defender’s office; and (5) his 55-year sentence was excessive because the trial court did not “meaningfully” consider factors in mitigation when imposing the sentence.

On February 3, 2000, the appellate court filed a Rule 23 order granting the public defender’s motion to withdraw. 
People v. Blair
, No. 1–98–4119 (2000) (unpublished order under Supreme Court Rule 23). The appellate court rejected defendant’s claim of ineffective assistance related to his posttrial motion that trial counsel neglected his case because she was “obviously medicated” due to an illness, making her “often incoherent.” The court added that his argument was “unsupported by the record or based on matters that are outside the record.” In a footnote, the appellate court noted that defendant had expressly declined to argue his posttrial motion on this basis and that the trial court denied the motion, stating that it was without merit. The court also rejected each of defendant’s additional 
pro se
 arguments. The court concluded, “We have carefully reviewed the record in this case, the aforesaid brief and defendant’s response in compliance with the mandate of the 
Anders
 decision and find no issues of arguable merit. Therefore, the motion of the public defender for leave to withdraw as counsel is allowed.” This court denied defendant’s petition for leave to appeal. 
People v. Blair
, 189 Ill. 2d 663 (2000) (order).

On January 8, 2001, defendant filed a 
pro se
 petition for postconviction relief. 725 ILCS 5/122–1 
et seq.
 (West 2000). In the petition, defendant set forth six arguments. Defendant first argued that his trial counsel improperly advised him to decline argument on his 
pro se
 posttrial motion, and that the trial court should have investigated his claim as to his counsel’s illness. Second, defendant alleged that his trial counsel’s illness caused her to be “obviously medicated” and “often incoherent” during her few brief visits to defendant outside the courtroom, and caused her to perform ineffectively during the suppression hearing and at trial. Third, defendant argued that his trial counsel did not present evidence of his alcohol and marijuana use while he was at the picnic prior to the shooting to support his second degree murder argument. Fourth, defendant alleged that his counsel was ineffective for introducing prejudicial gang-related evidence through his direct testimony. Fifth, defendant alleged that his counsel was ineffective for failing to call his teachers from the Cook County jail as character witnesses at his sentencing hearing. Finally, defendant alleged that he was denied effective assistance of appellate counsel because appellate counsel did not want to file a brief against another lawyer. Defendant attached his affidavit, in which he affirmed the petition’s statements were true. However, defendant declared no further facts in his affidavit.
(footnote: 1)
 On February 22, 2001, the circuit court summarily dismissed defendant’s postconviction petition in a written order. Orally, the court stated that it had considered the petition, the orders of the appellate court, and the trial record. The court found that the issues sought to be raised were 
res judicata
 or waived.

On appeal, the appellate court held that under the Act (725 ILCS 5/122–1 
et seq
. (West 2000)) and 
People v. Boclair
, 202 Ill. 2d 89 (2002), a trial court may not summarily dismiss a postconviction petition based upon 
res judicata
 or waiver because “ ‘[l]ike timeliness, the doctrines of waiver and 
res judicata
 do not address the question of whether a claim is frivolous or without merit; rather, they constitute procedural bars to a defendant’s right to prevail on a claim, regardless of its substantive merit.’ ” 338 Ill. App. 3d at 431-32, quoting 
People v. McGhee
, 337 Ill. App. 3d 992, 995 (2003). The appellate court remanded the matter to the trial court for further proceedings. 338 Ill. App. 3d at 432. We granted the State’s petition for leave to appeal. See 177 Ill. 2d R. 315(a).

ANALYSIS

The State argues on appeal that a trial court may summarily dismiss a petition based on 
res judicata
 and waiver because they are substantive limitations on the availability of postconviction relief under the plain meaning of the Act. According to the State, unlike timeliness, 
res judicata
 and waiver are inherent elements of the right to bring a postconviction petition because these doctrines go directly to the authority of a court to grant a petitioner any relief under the Act. The State urges that this interpretation is in accord with the history of the Act, and consistent with our decision in 
Boclair
, in that, where a defendant is precluded from obtaining relief due to 
res judicata
 and waiver, a claim is necessarily “frivolous” or “patently without merit.”

Defendant responds that the plain language of the Act requires only that the petition state the gist of a constitutional claim. He maintains that because the Act makes no specific reference to 
res judicata
 or waiver, a court may not summarily dismiss on either basis. Defendant also argues that the State’s interpretation is inconsistent with 
Boclair
. According to defendant, under 
Boclair
, neither 
res judicata
 nor waiver are “substantive” determinations within the purview of the Act, but rather procedural bars in the nature of an affirmative defense to which exceptions apply. Furthermore, the legal doctrines of 
res judicata
 and waiver are the sorts of legal issues that are beyond the ability of a 
pro se
 defendant to adequately address, thereby necessitating the assistance of court-appointed counsel. Defendant finally argues that the State’s interpretation is contrary to the legislative history of the Act.

In 1983, the General Assembly amended the Act to include section 122–2.1, which directed the trial court to conduct a threshold evaluation of postconviction petitions and to dismiss those which were “frivolous” or “patently without merit.” 
People v. Rivera
, 198 Ill. 2d 364, 369 (2001), citing Ill. Rev. Stat. 1985, ch. 38, par. 122–2.1(a). As applied to noncapital defendants, the Act then as now provides: “If the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision.” Ill. Rev. Stat. 1985, ch. 38, par. 122–2.1(a); 725 ILCS 5/122–2.1(a)(2) (West 2002). “Thus, the biggest change wrought to the Act by virtue of the 1983 amendment was that counsel was appointed to an indigent petitioner only after the court initially reviewed the petition and only if the court did not dismiss the petition on the ground of frivolity.” (Emphasis omitted.) 
Rivera
, 198 Ill. 2d at 369. We have noted that “section 122–2.1 provides for a simplified procedure in order to ensure that the criminal justice system’s limited resources are expended where most needed.” 
Rivera
, 198 Ill. 2d at 372.

The court in 
People v. Rivera
 quoted legislative history, noting that the judge is to look at the petition during the summary dismissal stage to determine “ ‘whether or not the petition has 
any
 merit.’ ” (Emphasis in original.) 
Rivera
, 198 Ill. 2d at 372, quoting 83d Ill. Gen. Assem., Senate Proceedings, May 19, 1983, at 172 (statements of Senator Sangmeister). “ ‘If it is filed frivolously and obviously without merit, then those further steps are necessary to be taken in terms of appointment of counsel and so forth, 
aren’t necessary
.’ ” (Emphasis in original.) 
Rivera
, 198 Ill. 2d at 373, quoting 83d Ill. Gen. Assem., House Proceedings, June 21, 1983, at 87 (statements of Representative Johnson). During these same debates quoted by the 
Rivera
 court, Representative Johnson stated of these petitions,

“in [almost] every instance, matters that were raised at the trial level and given the normal doctrines of waver [
sic
] and ratio cogna [
sic
] and so forth, those issues have already been raised. They can’t be raised again. They have had an opportunity with an attorney, with all the rights of a defendant to have gone through the process and have been convicted.” 83d Ill. Gen. Assem., House Proceedings, June 21, 1983, at 96 (statements of Representative Johnson).

Similarly, Senator Sangmeister stated the law addressed petitions which were “obviously without merit, frivolous, not filed in good faith or repetitive of issues already litigated and disposed of or simply malicious.” 83d Ill. Gen. Assem., Senate Proceedings, May 19, 1983, at 171 (statements of Senator Sangmeister). We also stated in 
Rivera
, “In our view, the summary dismissal stage of the post-conviction proceeding does nothing more than allow the circuit court to act strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit.” 
Rivera
, 198 Ill. 2d at 373. The General Assembly, however, has never further defined its intent pertaining to the adjectival phrase “frivolous or is patently without merit.”

 We recently drew contours of this intent in 
People v. Boclair
, 202 Ill. 2d 89 (2002), where we found that “frivolous” or “patently without merit” did not include a lack of timeliness for purposes of summary dismissal under section 122–2.1(a)(2) (725 ILCS 5/122–2.1(a)(2) (West 2002)). We noted, “[b]y addressing timeliness and frivolousness in separate provisions of the Act, the legislature plainly intended to draw a distinction between these two flaws of post-conviction petitions.” 
Boclair
, 202 Ill. 2d at 101. We then found that the phrase “frivolous or *** patently without merit,” as traditionally defined, does not include issues of timeliness. 
Boclair
, 202 Ill. 2d at 101 (citing Webster’s Third New International Dictionary 913 (1993), Black’s Law Dictionary 677 (7th ed. 1999), and 
Anders v. California
, 386 U.S. 738, 744, 18 L. Ed. 2d 493, 498, 87 S. Ct. 1396, 1400 (1967)).

Other considerations militated against first-stage dismissals based on timeliness. First, we noted that time is not an inherent element of the right to bring a postconviction petition because a time limit should be considered an affirmative defense which can be raised, waived, or forfeited by the State. 
Boclair
, 202 Ill. 2d at 101. Second, timeliness inquiries would require that the court engage in fact finding to determine whether the petitioner had credibly alleged facts showing a lack of “culpable negligence” which would excuse the late filing. At the summary review stage, however, courts measure a petition’s substantive virtue rather than its procedural compliance. Thus, in determining an issue of credibility as it pertains to a procedural issue, the circuit court necessarily “exceeds the boundary” set by section 122–2.1(a)(2). 
Boclair
, 202 Ill. 2d at 102. Finally, summary dismissal based on timeliness might result in the loss of a meritorious claim of actual innocence because the State does not have the opportunity to review the claim. 
Boclair
, 202 Ill. 2d at 102. We therefore concluded that matters of timeliness must “be left for the State to assert during the second stage of the post-conviction proceedings.” 
Boclair
, 202 Ill. 2d at 102.

Our appellate court is divided on whether the phrase “frivolous or is patently without merit” in section 122–2.1(a)(2) permits the summary dismissal of petitions based on 
res judicata
 and waiver. One view holds that the Act permits summary dismissals based on both 
res judicata 
and waiver. A second view holds that 
res judicata
 may be the basis of a summary dismissal, but not waiver or procedural default. The third view, including the court below, holds that neither 
res judicata
 nor waiver may properly constitute the basis of a summary dismissal.

According to the first view, followed by the first and fourth divisions of the First District of the appellate court, both 
res judicata
 and waiver fall under the general rubric “frivolous” or “patently without merit” in section 122–2.1(a)(2). 
People v. Smith
, 341 Ill. App. 3d 530 (2003); 
People v. Jefferson
, 345 Ill. App. 3d 60 (2003); 
People v. Smith
, 345 Ill. App. 3d 868 (2004); 
People v. Johnson
, 352 Ill. App. 3d 442 (2004). These courts reason that the legislature intended that the substantive scope and purpose of the Act preclude the retrial of issues that either were previously decided or could have been raised and decided at an earlier time. See, 
e.g.
, 
Smith
, 341 Ill. App. 3d at 537. Thus, waiver and 
res judicata 
are substantive considerations to the extent that they define and limit the scope and purpose of the Act. See, 
e.g.
, 
Smith
, 341 Ill. App. 3d at 537. These courts distinguish the issue of timeliness, because it is a consideration wholly collateral to the legislature’s intention as to the Act’s substantive scope and purpose. This intention is demonstrated by the legislature’s treating timeliness in a separate provision than section 122–2.1(a)(2). See, 
e.g.
, 
Smith
, 341 Ill. App. 3d at 537. Furthermore, waiver and 
res judicata
, while generally deemed to be affirmative defenses like timeliness, can be characterized for purposes of the Act as being integral to the substantive merits of the petition. 
Smith
, 341 Ill. App. 3d at 536-37. These courts affirmed dismissals of postconviction petitions where issues raised in the petitions were based upon facts that were ascertainable from the petition and the record and were raised, or could have been raised, on direct appeal. See 
Johnson
, 352 Ill. App. 3d at 448; 
Smith
, 345 Ill. App. 3d at 871.

The second approach is held by the sixth division of the First District and the Fourth District of the appellate court. These courts hold that a trial court may summarily dismiss a petition as 
res judicata
 if the court does not engage in fact finding or consider matters outside the record. 
People v. Etherly
, 344 Ill. App. 3d 599 (2003); 
People v. Campbell
, 345 Ill. App. 3d 810 (2004); 
People v. Sutherland
, 345 Ill. App. 3d 937 (2004); see also 
People v. Newbolds
, 352 Ill. App. 3d 678, 683 (2004) (Fifth District case discussing this approach, but resolving the case on another basis). This accords with the circuit court’s ability to consider the trial and appellate records during the first stage under section 122–2.1(c) of the Act. See, 
e.g.
, 
Etherly
, 344 Ill. App. 3d at 613, citing 725 ILCS 5/122–2.1(c) (West 2002). However, a court may not summarily dismiss a petition based on waiver and procedural default. These petitions may otherwise be fully meritorious, and matters of procedural compliance may not be considered at the initial stage of postconviction review. 
Etherly
, 344 Ill. App. 3d at 615, quoting 
Boclair
, 202 Ill. 2d at 124 (McMorrow, J., specially concurring). When the court is acting in this manner, it abandons its “administrative” duty to consider only substantive legal merit in the first stage and takes on an adversarial role to adjudicate procedural compliance. See, 
e.g.
, 
Etherly
, 344 Ill. App. 3d at 617. Furthermore, under the second view, no mechanism exists at the first stage for a defendant to properly respond to 
res judicata
 and waiver. See,
 e.g.
, 
Etherly
, 344 Ill. App. 3d at 616-17.

 Under the third view, espoused by the third division of the First District, the Second District, and the Fifth District of the appellate court, both 
res judicata
 and waiver are not properly within the terms “frivolous” or “patently without merit” to serve as bases for summary dismissal. 338 Ill. App. 3d 429; 
People v. McCain
, 312 Ill. App. 3d 529 (2000); 
McGhee
, 337 Ill. App. 3d 992; 
People v. Murray
, 351 Ill. App. 3d 219 (2004). Principally, these courts reason that 
res judicata
 and waiver do not address the substantive merits of the petition. See, 
e.g.
, 338 Ill. App. 3d at 431-32. Thus, “ ‘[l]ike timeliness, the doctrines of waiver and 
res judicata
 do not address the question of whether a claim is frivolous or without merit; rather, they constitute procedural bars to a defendant’s right to prevail on a claim, regardless of its substantive merit.’ ” 338 Ill. App. 3d at 431-32, quoting 
McGhee
, 337 Ill. App. 3d at 995. Similar to the intermediate view, the third view is wary of a trial court’s assumption of an adversarial role. 
McCain
, 312 Ill. App. 3d at 531. Accordingly, “[l]ike timeliness, waiver is in the nature of an affirmative defense that the State may either raise, waive, or forfeit.” 
People v. Stivers
, 338 Ill. App. 3d 262, 264 (2003). As such, 
res judicata 
and waiver are not absolute bars, and if summary dismissal were allowed, defendant would not have a chance to argue that an exception applies. 
Murray
, 351 Ill. App. 3d at 221-22. Therefore, at the summary dismissal stage, “the court should only determine whether the petition alleges constitutional deprivations, not whether the petitioner will ultimately succeed on those claims.” 
McCain
, 312 Ill. App. 3d at 531.

We agree with the State, and with the first and fourth divisions of the First District, and conclude that the legislature intended that trial courts may summarily dismiss postconviction petitions based on both 
res judicata
 and waiver. We begin by noting that in construing a statute, our primary objective is to give effect to the intention of the legislature. 
People v. Greer
, 212 Ill. 2d 192, 208 (2004). If this court can ascertain legislative intent from the plain language of the statute itself, that intent must prevail. 
Boclair
, 202 Ill. 2d at 100. To ascertain the legislature’s intent, we may properly consider not only the language of the statute, but also the purpose and the necessity for the law, evils sought to be remedied, and goals to be achieved. 
People v. Botruff
, 212 Ill. 2d 166, 175 (2004). We will not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent.
 Boclair
, 202 Ill. 2d at 100. We consider whether the legislature intended that the phrase “frivolous or *** patently without merit” includes 
res judicata
 or waiver. We review this issue 
de novo
. 
Boclair
, 202 Ill. 2d at 97; 
People v. Coleman
, 183 Ill. 2d 366, 388-89 (1998).

 We thus compare the definitions of 
res judicata
 and waiver to definitions of “frivolous” and “patently without merit.” In an initial postconviction proceeding, the common law doctrines of 
res judicata
 and waiver operate to bar the raising of claims that were or could have been adjudicated on direct appeal. 
People v. Pitsonbarger
, 205 Ill. 2d 444, 458 (2002). The doctrine of 
res judicata
 bars consideration of issues that were previously raised and decided on direct appeal. 
People v. West
, 187 Ill. 2d 418, 425 (1999); accord Black’s Law Dictionary 1336-37 (8th ed. 2004) (“
res judicata 
is an issue that has been definitively settled by judicial decision”). As to “waiver,” we note that courts often use the terms “forfeit,” “waive,” and “procedural default” interchangeably in criminal cases. See, 
e.g.
, 
People v. Corrie
, 294 Ill. App. 3d 496, 506 (1998); 
People v. Rogers
, 197 Ill. 2d 216, 221 (2001) (claims which could have been raised are deemed “forfeited”); 
People v Harris
, 206 Ill. 2d 293, 299 (2002) (claims which could have been raised are deemed “waived”); 
West
, 187 Ill. 2d at 425 (claims which could have been raised are “procedurally defaulted”). For purposes of this opinion, we henceforth use the term “forfeited” to mean issues that could have been raised, but were not, and are therefore barred. 
Rogers
, 197 Ill. 2d at 221. Forfeiture is defined as: “the loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty.” Black’s Law Dictionary 677 (8th ed. 2004); see also Webster’s Third New International Dictionary 891 (1993) (Forfeit means “something which is lost or the right to which is alienated by a crime, offense, neglect of duty, or breach of contract”).
(footnote: 2)
 In 
Boclair
, we examined the definitions of “frivolous,” “patently,” and “merit.” “ ‘Frivolous’ ” is defined as “ ‘of little weight or importance: having no basis in law or fact.’ ” 
Boclair
, 202 Ill. 2d at 101, quoting Webster’s Third New International Dictionary 913 (1993); Black’s Law Dictionary 677 (7th ed. 1999); 
Anders v. California
, 386 U.S. 738, 744, 18 L. Ed. 2d 493, 498, 87 S. Ct. 1396, 1400 (1967) (legal points “arguable on their merits” are not frivolous). “ ‘[P]atently’ ” means “ ‘CLEARLY, OBVIOUSLY, PLAINLY.’ ” 
Boclair
, 202 Ill. 2d at 101, quoting Webster’s Third New International Dictionary 1654 (1993); Black’s Law Dictionary 1147 (7th ed. 1999). “ ‘[M]erit’ ” means “ ‘legal significance, standing, or importance.’ ” 
Boclair
, 202 Ill. 2d at 101, quoting Webster’s Third New International Dictionary 1414 (1993); Black’s Law Dictionary 1003 (7th ed. 1999). Thus, “frivolous or *** patently without merit” may be defined as having no basis in law or fact and obviously without legal significance.

We conclude that the legislature intended that the phrase “frivolous or *** patently without merit” encompasses 
res judicata
 and forfeiture. Determinations of 
res judicata
 and forfeiture are inherently legal determinations which may bar relief under the Act. Thus, an otherwise meritorious claim has no basis in law if 
res judicata
 or forfeiture bar the claim. The legal component is therefore consistent with “frivolous” defined as “of little weight or importance: having no basis in 
law
 or fact.” (Emphasis added.) Webster’s Third New International Dictionary 913 (1993); Black’s Law Dictionary 677 (7th ed.1999); accord 
Anders v. California
, 386 U.S. 738, 744, 18 L. Ed. 2d 493, 498, 87 S. Ct. 1396, 1400 (1967) (
legal
 points “arguable on their merits” are not frivolous). It is also consistent with a clear, obvious, or plain lack of “merit,” meaning without “
legal
 significance, standing, or importance.” (Emphasis added.) Webster’s Third New International Dictionary 1414 (1993); Black’s Law Dictionary 1003 (7th ed. 1999). Thus, where 
res judicata 
and forfeiture preclude a defendant from obtaining relief, such a claim is necessarily “frivolous” or “patently without merit.”

The legislature has granted the courts the ability to make these determinations in sections 122–2.1(a)(2) and 122–2.1(c). 725 ILCS 5/122–2.1(a)(2), (c) (West 2002). The statute states that the circuit court “shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision.” 725 ILCS 5/122–2.1(a)(2) (West 2002). Again, 
res judicata
 and forfeiture are conclusions of law. The language of section 122–2.1(a)(2) does not limit or qualify the type of conclusion of law and therefore does not disable a judge from considering 
res judicata
 and forfeiture. More importantly, when evaluating a petition, a trial court “may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding.” 725 ILCS 5/122–2.1(c) (West 2002). This provision does not limit a court’s review of the record and appellate court ruling to determine if only the petition’s factual allegations are rebutted. Rather, on the basis of facts and legal rulings that are ascertainable from the court file, appellate court action, and any transcripts, a court may also determine if legal claims have been decided or could have been raised, thus rebutting the claims contained in the petition.

Accordingly, defendant’s argument that a trial judge may only consider the “gist” of a claim in the petition falsely construes the legislature’s intention as to the judge’s role at the first stage. Our decisions regarding the meaning of the “gist” standard have arisen only outside the context of 
res judicata
 and forfeiture. See, 
e.g.
, 
People v. Edwards
, 197 Ill. 2d 239 (2001). They do not purport to decide the instant issue. Rather, as we have found, the legislature intended that the court be allowed to make legal determinations based on both 
res judicata 
and forfeiture. We therefore decline defendant’s invitation to hold that a judge should only attempt to divine a gist of a claim from a defendant’s petition, but then ignore a record which clearly demonstrates that a prior court had specifically found that a fully litigated claim lacked merit. Similarly, we will not direct a judge to ignore the doctrines of waiver, forfeiture, and procedural default where a review of the facts ascertainable from the record clearly demonstrates that the claim could have been raised in the prior proceeding. To hold otherwise, we would be forcing courts to waste judicial resources by merely delaying the dismissal of a petition which the judge knows could never bear fruit for the petitioner. Rather, the legislature emphatically intended dismissal of these frivolous claims when it provided that a court “may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding.” 725 ILCS 5/122–2.1(c) (West 2002).

Our holding is consistent with the general purpose of the postconviction proceeding. The Act provides a procedural mechanism through which a convicted criminal can assert “that in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both.” 725 ILCS 5/122–1(a) (West 2002); 
Coleman
, 183 Ill. 2d at 378-79. “The purpose of the post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction that have not already been adjudicated or could have been.” 
People v. Silagy
, 116 Ill. 2d 357, 365 (1987). Hence, in a postconviction proceeding, the trial court does not redetermine a defendant’s innocence or guilt, but instead examines constitutional issues which escaped earlier review. 
Rogers
, 197 Ill. 2d at 221. As such, a petition for postconviction relief is not an appeal of the underlying judgment; rather, it is a collateral proceeding. 
Rogers
, 197 Ill. 2d at 221; 
West
, 187 Ill. 2d at 425. These principles support first stage dismissal based upon collateral rules of law such as 
res judicata
 and forfeiture. By its very nature, the Act provides a collateral remedy, and it makes little sense for a judge to disregard the very rules governing collateral attack when he or she “may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding.” 725 ILCS 5/122–2.1(c) (West 2002).

Furthermore, allowing a petition to be summarily dismissed in this manner is consistent with the legislature’s purpose in passing section 122–2.1(a)(2) in 1983. In 
Rivera
 we stated, “section 122–2.1 provides for a simplified procedure in order to ensure that the criminal justice system’s limited resources are expended where most needed.” 
Rivera
, 198 Ill. 2d at 372. We looked to the legislative history, and noted that the judge is to examine the petition to determine “ ‘whether or not the petition has 
any
 merit.’ ” (Emphasis in original.) 
Rivera
, 198 Ill. 2d at 372, quoting 83d Ill. Gen. Assem., Senate Proceedings, May 19, 1983, at 172 (statements of Senator Sangmeister). “ ‘If it is filed frivolously and obviously without merit, then those further steps *** in terms of appointment of counsel and so forth, 
aren’t necessary
.’ ” (Emphasis in original.) 
Rivera
, 198 Ill. 2d at 373, quoting 83d Ill. Gen. Assem., House Proceedings, June 21, 1983, at 87 (statements of Representative Johnson). Our holding also accords with statements made in these same debates that the law dealt with petitions raised “in [almost] every instance, matters that were raised at the trial level and given the normal doctrines of waver [
sic
] and ratio cogna [
sic
] and so forth, those issues have already been raised. They can’t be raised again.” 83d Ill. Gen. Assem., House Proceedings, June 21, 1983, at 96 (statements of Representative Johnson). Similarly, the law governed petitions which were “obviously without merit, frivolous, not filed in good faith or repetitive of issues already litigated and disposed of or simply malicious.” 83d Ill. Gen. Assem., Senate Proceedings, May 19, 1983, at 171 (statements of sponsor Senator Sangmeister).

We also noted in 
Rivera
, “[i]n our view, the summary dismissal stage of the post-conviction proceeding does nothing more than allow the circuit court to act strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit.” 
Rivera
, 198 Ill. 2d at 373. Defendant argues that a court acting in an “administrative capacity” may not consider issues which may be affirmative defenses raised by the State. Defendant misconstrues 
Rivera
. By “administrative capacity” we meant to reflect the judge’s role in “screening out petitions which are without legal substance or obviously without merit” without input from the parties in accordance with the simplified purpose of the Act. In other words, we did not mean by “administrative” that the legislature intended to pluck the gavel from the judge’s hand and replace it with the clerk’s stamp.

Defendant’s argument that this claim should proceed to the second stage for the benefit of an attorney to refine the claim is also without justification. The constitutional right to counsel does not apply to postconviction proceedings, and the Act only grants that right during the second stage. 
Greer
, 212 Ill. 2d at 203, citing 
People
 v. 
McNeal
, 194 Ill. 2d 135, 142 (2000). As we stated in 
Greer
, “the legislature has seen fit to confer upon the circuit court the power, without the necessity of appointing counsel, to dismiss, outright, petitions at first stage when they are deemed frivolous or patently without merit.” 
Greer
, 212 Ill. 2d at 208-09; see also 
People v. Jones
, 211 Ill. 2d 140, 148 (2004).

We disagree with defendant’s related implication that the judge is assuming an adversarial role. A judge is a neutral arbiter and acts as counsel for neither party. We do not presume the judge acts as an advocate; rather, we presume that the trial judge knows and follows the law unless the record demonstrates otherwise. 
People v. Gaultney
, 174 Ill. 2d 410, 420 (1996). Furthermore, just as the judge is not a counsel for defendant when he allows a petition to proceed to the second stage, the judge is not a counsel for the State when he finds that the claim was raised, or could have been raised, in an earlier proceeding.

Our holding in 
People v. Boclair
, 202 Ill. 2d 89 (2002), is consistent with this resolution. Unlike timeliness, first-stage considerations of 
res judicata 
and forfeiture raised by an original or amended petition are not mentioned in separate provisions in the Act. Rather, 
res judicata 
and forfeiture fall within the plain language of “frivolous or *** patently without merit” in section 122–2.1(a)(2), which permits summary dismissal. 725 ILCS 5/122–2.1(a)(2) (West 2000). More importantly, section 122–2.1(c) allows the court to “examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding” to determine if issues of 
res judicata
 and forfeiture are present. 725 ILCS 5/122–2.1(c) (West 2002). Although the Act allows the State to raise these issues as defenses later in the second stage, the Act also allow the judge to consider these issues at the first stage.

Other considerations in 
Boclair
 are inapposite here. Unlike timeliness, 
res judicata
 and forfeiture do not have exceptions which would require a factual determination at the summary dismissal stage, such as the culpable negligence exception to timeliness, requiring credibility determinations. Since section 122–2.1(a)(2) expressly requires the petition to be “frivolous or patently without merit,” trial courts will rely upon those grounds for summary dismissal where it is clear from the facts ascertainable in the record that the petitioner’s claims are barred by legal concepts of 
res judicata
 or forfeiture. Thus, where the court need look only at the record of the former proceedings, it may properly dismiss the petition.

Notably, exceptions to the doctrines of 
res judicata
 and forfeiture may allow otherwise barred claims to proceed. It has long been held that 
res judicata 
and forfeiture do not apply where fundamental fairness so requires; where the alleged forfeiture stems from the incompetence of appellate counsel; or where facts relating to the claim do not appear on the face of the original appellate record. 
People v. Harris
, 206 Ill. 2d 1, 13 (2002); 
People v. Whitehead
, 169 Ill. 2d 355, 371-72 (1996), 
overruled on other grounds, Coleman
, 183 Ill. 2d 366. Further, defendant has an opportunity to respond to the court’s summary dismissal based on 
res judicata
 and forfeiture. A defendant may file a motion to reconsider which may claim exceptions to 
res judicata
 and forfeiture. A defendant may also challenge a summary dismissal on appeal. Successive petitions may also be filed as permitted by law.

Moreover, the judge’s power to dismiss petitions which are barred by 
res judicata
 and forfeiture at the first stage remains circumscribed by the statute, similar to every other petition a defendant may set forth. For example, courts may find that, after a review of the petition and the record of the former proceedings, it is a close call as to whether a petition which states a gist of a constitutional claim is otherwise barred by 
res judicata
 and forfeiture, or whether the petition presents an exception to these doctrines. In these cases, the petition is not “frivolous” or “patently without merit.” Therefore, the court may properly allow a petition to proceed to the second stage to allow the appointment of an attorney to potentially amend the defendant’s petition, allow the State to file a motion to dismiss, and to garner the benefit of the adversarial process.

Because we find the Act is not ambiguous, we need not consider defendant’s remaining arguments hinging on ambiguity.

Propriety of the Trial Court’s First-Stage Dismissal

Defendant alternately requests cross-relief, seeking reversal of the circuit court’s dismissal of the petition based on 
res judicata 
or waiver. We note that the trial court did not specify which basis it ruled on as to each claim. Defendant argues only two of six of his claims in his 
pro se
 petition on appeal. The first relates to the health of his counsel during his trial. The second concerns his trial counsel’s decision not to introduce evidence about his alcohol and marijuana use prior to the killing during his direct examination. He alleges that the facts relating to the claims do not appear on the face of the original appellate record. He additionally contends that his appellate counsel on direct appeal was ineffective for failing to raise these same claims on direct appeal. Defendant makes no argument on appeal as to the other allegations in his petition. Our review is 
de novo
. 
Boclair
, 202 Ill. 2d at 97.

First, defendant asserts that counsel was “obviously medicated” and “often incoherent” during her few brief visits to defendant in his holding cell outside the courtroom and, consequently, her illness and her personal problems affected her judgment and her preparation for the motion to suppress and trial. Defendant seeks an exception to 
res judicata
, as he argues this is outside the record of his direct appeal. Defendant presented no further related facts in the affidavit attached to the petition. On appeal, defendant argues that this allegation states a claim for ineffective assistance of trial counsel which is not barred by 
res judicata
 or forfeiture because it constitutes a new allegation “outside the record.”

The record reveals that after trial in the former proceedings, defendant filed a 
pro se
 motion for a new trial, alleging that during the trial his attorney became physically ill and did not ask for a continuance, and his attorney’s illness may have caused her to inadequately represent the defendant. The trial judge stated, “As to defendant’s motion for new trial, based upon the fact his attorney was physically ill and did not ask for a continuance in this matter, I find there is no merit whatsoever. Counsel did an excellent job in representation of this defendant. This motion will also be denied.” We note that the appellate court, in the direct appeal, rejected defendant’s claim that trial counsel “neglected his case because she was ‘obviously medicated’ due to an illness, making her “often incoherent.” The appellate court stated that “a review of defendant’s contentions established that they are either unsupported by the record or based on matters that are outside the record.” In a footnote, the appellate court provided that defendant had expressly declined to argue his posttrial motion on this point and the trial court denied the motion, stating that it was without merit. 
People v. Blair
, No. 1–98–4119 (2000) (unpublished order under Supreme Court Rule 23).

Defendant has presented nothing outside the record in his instant petition and affidavit. Rather, he merely reasserts that counsel was “obviously medicated” and “often incoherent.” Even assuming these allegations of illness are not conclusions (
West
, 187 Ill. 2d at 425-26 (broad, unsupported, conclusory allegations in a postconviction petition are not allowed)), the petition says nothing as to how, even taking the illness as true, the illness affected counsel’s performance. More importantly, this conclusory claim does not rebut the trial judge’s observation that counsel’s in-court performance during the proceedings before him was “excellent.” Therefore, the petition contains nothing but the bare assertion that counsel neglected his case, which was also rejected by the appellate court on direct appeal. Hence, there is nothing on this issue which has not previously been addressed by the trial court and appellate court on direct appeal. The trial court correctly decided that this issue was barred by 
res judicata
.

Defendant’s next argument pertains to the following allegation, that defendant

“informed his P.D. that while he was at the picnic prior to the incident, he had indeed been drinking alcohol and smoking marijuana, which would of course describe his state of mind and lend to the explanation of how he could have easily (however unreasonable) believed he needed to protect himself if that belief was unreasonable at all. The P.D. should not have withheld this information from the jury, especially considering the fact that the only evidence offered at trial by the P.D. was the testimony of the petitioner stating his belief of being threatened.”

Defendant contends the allegation is “outside the record” and not barred by forfeiture.

We first note that the petition’s allegations are factually rebutted by the record. First, the trial transcript reveals that defendant’s friend who was present at the shooting, Marcus Wright, testified on cross-examination that he had been drinking beer and gin with defendant and that Wright thought defendant had been smoking marijuana. The trial transcript reveals, therefore, that defendant’s trial counsel did elicit evidence of defendant’s marijuana and alcohol use at trial. Second, the trial transcript reveals that defendant left the picnic at “midday” or “in the afternoon,” and the shooting did not occur until 8:45 p.m., thus negating an implied time frame in his petition that the shooting occurred shortly after the picnic. Indeed, although evidence was in the record and presented to the jury that defendant had consumed drugs and alcohol, this evidence did not alter the jury’s verdict.

Moreover, defendant failed to meet the Act’s affidavit requirement. He has provided no facts whatsoever concerning his alcohol use or marijuana use in his affidavit, other than a general statement that the facts in his petition are true. Nor is there an explanation as to why it is not provided, although such evidence would be within his own recall. A postconviction petition is required to have attached “affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached.” 725 ILCS 5/122–2 (West 2002).

More importantly, however, defendant cannot assert an exception to forfeiture. Because the facts regarding defendant’s mere alcohol and marijuana use are already in the record, defendant presents no new allegations in his petition or affidavit that can be deemed “outside the record.” Therefore, defendant’s claim on this matter is forfeited. Furthermore, our research has revealed no authority stating that the mere fact of alcohol and marijuana use is sufficient to support a second degree murder instruction or negate the intent for first degree murder.

Defendant next argues that the rule of 
res judicata
 and forfeiture should be relaxed because of his claim of ineffective assistance of appellate counsel. Defendant argues that appellate counsel on direct appeal was ineffective for failing to argue that the trial court should have conducted an investigation regarding his trial counsel’s alleged illness when he presented his posttrial motion pursuant to 
People v. Krankel
, 102 Ill. 2d 181 (1984) (concerning the appointment of counsel by the trial court to investigate a defendant’s posttrial 
pro se
 allegation of ineffective assistance of counsel).

This issue was addressed in the defendant’s direct appeal and is therefore barred by 
res judicata
. After the public defender filed a motion for leave to withdraw and a brief in support of the motion pursuant to 
Anders v. California
, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967), defendant filed a 
pro se 
response alleging ineffective assistance of appellate counsel based on a failure to raise issues pertaining to ineffective assistance of trial counsel, including the issue of trial counsel’s illness. As stated above, the appellate court rebuffed these claims which were contained in defendant’s 
pro se
 posttrial motion relating to trial counsel’s alleged illness, although without specifically citing 
Krankel
. The appellate court stated, “[B]ecause we held that trial counsel was not ineffective based upon defendant’s various allegations, appellate counsel was not ineffective for failing to argue that issue on appeal.” 
Blair
, No. 1–98–4119 (unpublished order under Supreme Court Rule 23).

Defendant makes no further argument that 
res judicata 
and forfeiture should be relaxed under a third exception, fundamental fairness, nor does our review of the record on appeal and defendant’s petition reveal any such claim. Defendant also makes no argument as to a claim of actual innocence. We also note that the State has not indicated that it wishes to forgo the affirmative defenses of 
res judicata 
and forfeiture on appeal.

Finally, defendant also argues that his mittimus should be corrected to reflect the time he spent in custody from January 17, 1996, to and including January 28, 1996. The State has made no objection. We remand to the circuit court to issue a corrected mittimus.

CONCLUSION

The legislature intended that a judge “may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding” (725 ILCS 5/122–2.1(c) (West 2002)) to determine if the petition’s claims have been or could have been adjudicated in the original proceeding. Further, the legislature intended that, based on facts ascertainable from the record, a circuit court may summarily dismiss a petition as “frivolous or *** patently without merit” based on both 
res judicata
 and forfeiture under the Act. 725 ILCS 5/122–2.1(a)(2) (West 2002). We therefore reverse the judgment of the appellate court. Accordingly, we find that the circuit court’s summary dismissal of defendant’s petition was proper, and affirm that judgment. We also remand with directions to the circuit court to correct the mittimus.

Appellate court judgment reversed;

circuit court judgment affirmed;

remanded with directions.

JUSTICE FREEMAN, dissenting:

I believe the analysis offered by the court in support of its result is fundamentally inconsistent with previous decisions issued by this court in the area of postconviction litigation. I, therefore, must respectfully dissent.

Defendant maintains in this appeal that the Post-Conviction Hearing Act does not allow for summary dismissal on the basis of 
res judicata
 and waiver.
(footnote: 3) The State responds that claims that are subject to 
res judicata
 and procedural default constitute claims that are either “frivolous” or “patently without merit” and are therefore subject to summary dismissal under the plain language of section 122–2.1 of the Act.

Our Post-Conviction Hearing Act provides a mechanism by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. See 725 ILCS 5/122–1 
et seq
. (West 2000). Proceedings under the Act are commenced by the filing of a petition in the circuit court in which the original proceeding took place. Section 122–2.1 of the Act speaks to orders of dismissal. The statute requires that within 90 days after the filing and docketing of each petition, the circuit court must examine the petition and enter one of two orders set forth within the subsections of the statute. Relevant to this appeal is section 122–2.1(a)(2), which states:

“If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law made in reaching its decision.” 725 ILCS 5/122–2.1(a)(2) (West 2000).

At this juncture in the proceedings, the Act does not allow the State the opportunity to raise any arguments against the petition. The Act, at this point, provides only that “[i]n considering a petition pursuant to [section 122–2.1], the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding.” 725 ILCS 5/122–2.1(c) (West 2000). Thus, at this initial stage of the proceedings, the circuit court is acting solely on the filed petition, without any input from the State. This court has held that to survive dismissal at this stage, the petition need only state “the gist of a constitutional claim.”
 
People v. Gaultney
, 174 Ill. 2d 410, 418 (1996). If the petition survives this initial stage, the proceeding advances to the second stage, where the circuit court may then appoint counsel to represent an indigent petitioner (725 ILCS 5/122–4 (West 2000)), with counsel being given the opportunity to amend the petition (725 ILCS 5/122–5 (West 2000)). At this second stage, the Act requires that the State either file an answer or move to dismiss the petition. 725 ILCS 5/122–5 (West 2000). If the petition is not dismissed at the second stage, the proceeding advances to the third stage, where an evidentiary hearing can be held. 725 ILCS 5/122–6 (West 2000). 

In this case, we must determine whether claims that are procedurally defaulted or 
res judicata
 constitute claims that are “frivolous” or “patently without merit” so as to qualify for summary dismissal under section 122–2.1. In construing a statute, courts should consider the statutory language and give effect to the language of the Act as written when that language is clear. 
People v. Rivera
, 198 Ill. 2d 364, 371 (2001). It must be initially pointed out that the term 
res judicata
 is not used within the Act. The term waiver appears only in section 122–3, which provides that “[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.” 725 ILCS 5/122–3 (West 2000). This is not the type of “waiver” that is at issue in this case. Moreover, the Act does not define the terms “frivolous” or “patently without merit.” In 
People v. Boclair
, 202 Ill. 2d 89 (2002), this court addressed what constitutes a “frivolous or patently without merit” petition in the context of whether the circuit court could dismiss, at the summary stage, a postconviction petition on timeliness grounds. We held that such a dismissal was not proper under the Act. In so holding, we construed section 122–2.1 to require the circuit court, at that stage of the proceedings, to “measure[ ] a petition’s substantive virtue rather than its procedural compliance.” 
Boclair
, 202 Ill. 2d at 102. This view was espoused by all members of the court. See 
Boclair
, 202 Ill. 2d at 124 (McMorrow, J., specially concurring, joined by Freeman, J.) (noting that opinion stands for the proposition that “matters of ‘procedural compliance’ [citation] may 
not
 be considered in the initial stage of post-conviction review” (emphasis in original)); 
Boclair
, 202 Ill. 2d at 143 (Thomas, J., specially concurring, joined by Fitzgerald, J.) (noting that in determining whether a postconviction petition is frivolous or patently without merit, the trial court may not consider whether the petition suffers from a procedural defect). 

I believe today’s decision is inconsistent with the principles we established in 
Boclair
. Like timeliness, the doctrines of procedural default and 
res judicata
 do not address the question of whether a claim is frivolous or patently without merit. Instead, both doctrines serve as procedural devices intended to preclude a court from considering in the first instance the substantive merits of the claim. A claim that is procedurally defaulted is not necessarily without substantive merit. It is because of this very fact, 
i.e.
, that such claims may in fact warrant relief, that courts have developed exceptions which serve to excuse the procedural bar. See 
People v. Simpson
, 204 Ill. 2d 536, 552 (2001) (acknowledging in postconviction proceeding that procedural default can be excused upon petitioner’s showing of “cause and prejudice”). It is also why procedural default, in particular, is in the nature of an affirmative defense in that the State must raise it or forfeit it. See 
People v. O’Neal
, 104 Ill. 2d 399, 407 (1984) (noting that principles of procedural default apply to the State as well as to defendants in criminal cases); 
People v. Holloway
, 86 Ill. 2d 78, 91 (1981) (same). The fact that the State can “waive waiver” reinforces the fact that the doctrine is an affirmative matter that must be raised by the State–this court has repeatedly stated that the doctrine does not constitute “a jurisdictional or absolute bar to review of procedurally defaulted claims.” 
Simpson
, 204 Ill. 2d at 552.

Despite the plethora of case law that establishes that the doctrines of 
res judicata
 and procedural default serve as 
procedural
 bars to review of the substantive merits of a claim, the court today, throughout its analysis, characterizes the doctrines as substantive components in determining whether a claim is frivolous or patently without merit. The court concludes that the legislature intended that the phrase “ ‘frivolous or *** patently without merit’ encompasses 
res judicata
 and forfeiture” because “[d]eterminations of 
res judicata
 and forfeiture are inherently legal determinations which may bar relief under the Act.” Slip op. at 13. The court, however, fails to take into account that the question of whether a claim is barred by the doctrines of 
res judicata
 and forfeiture is not always a purely legal one. There are recognized exceptions to both doctrines that may cause a court to excuse the procedural bar and reach the substantive merits of a claim, and the summary stage of the post-conviction proceeding is not always the appropriate venue to engage in the analysis that is sometimes necessary to answer whether those exceptions have been met. For example, as I have noted, this court has recognized that a claim can be heard on its merits even if that claim could have been raised before if defendant shows cognizable cause for his failure to make timely objections, and shows actual prejudice flowing from the error complained of. See, 
e.g.
, 
People v. Hudson
, 195 Ill. 2d 117, 123 (2001) (citing cause and prejudice standard used in postconviction litigation). Oftentimes, in order to determine whether that standard is met, a court may have to hold an evidentiary hearing. See 
Hudson
, 195 Ill. 2d at 137, citing 
United States ex rel. Veal v. DeRobertis
, 693 F.2d 642 (7th Cir. 1982). Likewise 
res judicata
 can be defeated if the ends of justice so require. See 
People v. Tenner
, 206 Ill. 2d 381, 402 (2002) (Freeman, J., specially concurring). Thus, the court is wrong to conclude that the determinations surrounding 
res judicata
 and procedural default are strictly questions of law. The determination can often raise mixed questions of law and fact which are inherently unsuitable for summary treatment. 

 The court acknowledges that exceptions to the doctrines exist which may allow an otherwise barred claim to proceed (slip op. at 18), but implies that these exceptions are of no moment at the first stage because a petitioner is protected by other means with which to assert these exceptions. The court’s attempts to demonstrate the viability of these other means, miss the mark entirely. For example, the court suggests that a petitioner has the ability to respond to a circuit court’s summary dismissal by filing a motion to reconsider. Slip op. at 18. My colleagues, however, overlook the fact that filing such a motion would be a largely futile gesture since any legal points sufficient to challenge the initial ruling are beyond the ken of a 
pro se
 litigant. The court also states that a petitioner can challenge the summary dismissal on appeal (slip op. at 18), an option which would necessitate appointment of counsel, participation of the State, and review by an appellate court, thereby expending even more judicial resources than would have been expended by simply advancing the matter to the second stage. The court also states that successive petitions can be filed as well. Slip op. at 18. Successive postconviction petitions, however, are disfavored by law and subject to even greater procedural hoops than an original petition. The court’s attempt to play down the exceptions to the doctrines of 
res judicata
 and procedural are not at all persuasive. 

In my view, the plain language of the Act reveals that affirmative defenses such as procedural default and 
res judicata
 are more properly addressed during second stage proceedings held pursuant to sections 122–4 and 122–5 of the Act. As noted at the outset of this dissent, these statutes allow for the (i) appointment of counsel, (ii) amendment of pleadings, and (iii) appearance by the State to answer or move to dismiss. The availability of responsive pleadings at the second stage of a postconviction proceeding seemingly would suggest that the legislature intended to establish a statutory scheme for postconviction litigation which commences with an initial administrative screening by the trial court and proceeds forward in a normal, two-party adversarial setting. To hold as the court does today completely eliminates the State’s role in filing motions to dismiss under section 122–5 in cases where defendants are not under sentence of death. I know of no rule of statutory construction which would allow for such a result.
(footnote: 4)
 I note that the court also cites the language of section 122–2.1, which authorizes the circuit court during the summary dismissal stage to examine the record from the underlying proceedings, as support for its conclusion in this area. 

“[W]hen evaluating a petition, a trial court ‘may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding.’ [Citation.] This provision does not limit a court’s review of the record and appellate court ruling to determine if only the petition’s factual allegations are rebutted. Rather, on the basis of facts and legal rulings that are ascertainable from the court file, appellate court action, and any transcripts, a court may also determine if legal claims have been decided or could have been raised, thus rebutting the claims contained in the petition.” Slip op. at 14.

While I agree that section 122–2.1(c) authorizes the circuit court to examine the underlying record, I do not read that section as authorizing the circuit court at the first stage of the proceeding not only to examine the record in order to determine whether an affirmative defense such as procedural default is available to act as a bar to the claim raised by the defendant, but to resolve the issue in summary fashion. As I have demonstrated, the question of whether a claim is barred by either procedural default or 
res judicata
 can be a complex one. Allowing the circuit court to engage in such questions at the summary dismissal stage runs counter to the “administrative” role that this court has stated our legislature intended for the circuit court at that stage. See 
People v. Rivera
, 198 Ill. 2d 364, 373 (2001) (holding that “the summary dismissal stage of the post-conviction proceeding does nothing more than allow the circuit court to act strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit”). In this way, today’s opinion is inconsistent with 
Rivera.
 Rather than simplifying the circuit court’s job, today’s holding gives that court even more substantive responsibilities. Today’s holding in no way comports with our holding in 
Rivera
 that the circuit court is to act strictly in an administrative capacity at the initial summary stage of postconviction litigation. Rather, it requires the judge to don not only an administrative hat at this stage, but an adversarial one as well. A judge’s function, however, is not to advocate. I find the court’s attempt to play down the dual function its holding requires the circuit court to undertake (slip op. at 17) to be utterly unpersuasive. Reviewing a criminal record in the manner contemplated by my colleagues–without any assistance or input from the parties–requires that a considerable amount of time be expended to the case by the judge. My colleagues seem to forget that the typical criminal judge’s docket contains 
multiple
 postconviction petitions and that, for each petition, the judge will be required to devote a considerable period of time to scouring the record for procedural bars to relief and possible exceptions thereto. The plain language of section 122–2.1 does not require that our criminal judges shoulder such a burden, and I see no legitimate reason for this court to hold otherwise.

As a final matter, I wish to point out that it strains logic for this court
 
to hold as it did in 
Boclair
, 
i.e.
, 
that the circuit court at the summary stage cannot rule on the timeliness of a petition–a fact easily ascertainable by a simple glance at a calendar–but rather the circuit court must allow the matter to be raised only by the State at the second stage of the proceedings; and yet today, hold that the circuit court can rule on potentially complex procedural bars without any input from the parties at all. I 
submit that both 
Boclair
 and 
Rivera
 stand for the proposition that at the summary dismissal stage, the circuit court functions administratively and is limited to determining whether the petition states the gist of a constitutional claim. All other concerns, 
i.e.
, whether the petition is timely, whether procedural bars exist or should be excused, are deferred to the second stage of the postconviction proceeding, where the court would have the assistance of briefs and argument from both the petitioner and the State. Today’s holding does nothing more than turn the circuit court into an advocate against the petitioner as well as his or her judge. 

In light of the above, I respectfully dissent.

CHIEF JUSTICE McMORROW and JUSTICE KILBRIDE join in this dissent.

FOOTNOTES
1:     
1
Defendant’s affidavit stated, in pertinent part, as follows:

“I, Leon Blair, being first duly sworn upon oath deposes and states:

* * *

4). That, those matters and subjects stated in the petition, yet not found in the record are in fact, true.

5). That, affiant was in fact, coerced by the trial P.D. not orally address the court concerning the post-trial motion.

6). That, the record does in fact reflect many instances where P.D. failed to appear for court, or was late, causing the case to be passed.

7). That, the trial P.D. presence and presentation was a poor representation, at best, as she was unprepared for motion hearing and trial.

8). That, as reflected in the record, as well as in the petition, the court was indeed aware of the P.D.’s illness.

9). That, the P.D. should have requested a continuance to better prepare for trial as well as deal with her own personal problems that distracted her.

10). That, had his P.D. properly advised the affiant, he could/would have argued his post-trial motion which could have allowed the court to appoint independent counsel to represent affiant in a hearing as the P.D. account for her actions of gross neglect.

11). That, upon hearing such compelling evidence the court would have to order a new trial.

12). That, on appeal the affiant discussed this matter with his appellate P.D. whom had a problem with filing ineffective assistance of counsel issues on other attorneys and refused to raise the issue.”

2:     
2
“Waiver” strictly means the voluntary relinquishment of a known right. 
Hill v. Cowan
, 202 Ill. 2d 151, 158 (2002); accord Black’s Law Dictionary 1611 (8th ed. 2004). As explained by the United States Supreme Court in 
United States v. Olano
, 507 U.S. 725, 123 L. Ed. 2d 508, 113 S. Ct. 1770 (1993), “Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of the right, waiver is the ‘intentional relinquishment or abandonment of a known right.’ ” 
Olano
, 507 U.S. at 733, 123 L. Ed. 2d at 519, 113 S. Ct. at 1777. Similarly, “procedural default” relates to a failure by counsel to comply with certain procedural requirements. This failure results in the forfeiture of defendant’s right to raise that error on appeal. 
Corrie
, 294 Ill. App. 3d at 506.

3:     
3
I have pointed out, in previous writings while on this court, that what is meant by the term “waiver” in this context is more precisely a “procedural default”–waiver implies a knowing relinquishment of right whereas procedural default refers to the failure to adequately preserve an issue for later appellate review. See, 
e.g.
, 
People v. Jung
, 192 Ill. 2d 1, 11 (2000) (Freeman, J., specially concurring, joined by Miller and McMorrow, JJ.); 
People v. Terrell
, 185 Ill. 2d 467, 522 (1998) (Freeman, C.J., specially concurring, joined by McMorrow, J.)

4:     
4
I note that the court relies on a statement from Representative Johnson during the legislative debate of the future section 122–2.1 where he stated that claims subject to “ ‘waver [
sic
] and ratio cogno [
sic
]’ ” cannot be raised again and that these kind of claims, among others, are subject to summary dismissal. 
Slip op. at 8, quoting 83d Ill. Gen. Assem., House Proceedings, June 21, 1983, at 96 (statements of Representative Johnson). While I do not dispute that the legislature may have intended that such claims be subject to summary dismissal, the legal doctrines of both 
res judicata
 and procedural default are subject to well-known and familiar judicial exceptions that are not suited for litigation at the summary dismissal level.
 The legislative debate reveals that the legislature did not consider the judicial exceptions to the rule nor did it consider how the exceptions might fit within the summary dismissal structure. Thus, the fact that section 122–2.1 does not list examples such as those that Representative Johnson gave on the House floor to define the terms “frivolous” and “patently without merit” suggests that the General Assembly sought to leave the matter of deciding what constituted “frivolous” and “patently without merit”claims to the judiciary.