# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Wilson*, 2013 IL App (1st) 112303

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RECO WILSON, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-2303 |
| Filed | September 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in summarily dismissing defendant's *pro se* postconviction petition alleging that his counsel was ineffective in failing to call defendant's girlfriend as an alibi witness in his prosecution for first degree murder arising out of an aggravated vehicular hijacking under an accountability theory, since his petition was supported by his girlfriend's signed and notarized affidavit and corroborated defendant's trial testimony that he did not facilitate the offense, but merely told the perpetrator where he could find the vehicle. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CR-11843; the Hon. Clayton J. Crane, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Todd T. McHenry, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Douglas P. Harvath, and Peter Maltese, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE MASON delivered the judgment of the court, with opinion.

Presiding Justice Hyman and Justice Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Reco Wilson appeals the summary dismissal of his *pro se* postconviction petition. On appeal, Wilson contends that his petition, supported by a signed and notarized affidavit of an alleged alibi witness, presents an arguable claim that trial counsel provided ineffective assistance where counsel failed to call that witness. Accordingly, Wilson contends that his petition should advance to the second-stage proceedings with appointment of counsel. For the reasons that follow, we reverse and remand for further postconviction proceedings.

¶ 2                          BACKGROUND

¶ 3    In simultaneous but severed bench trials in 2008, Wilson and codefendant Marcel Milton were convicted of first degree murder in the shooting death of Deon Gardner. The State presented evidence that Milton fatally shot Gardner on March 22, 2004, during the course of an aggravated vehicular hijacking. Wilson was convicted on an accountability theory for calling Milton and informing him of the vehicle's location, knowing that Milton was armed with a gun.

¶ 4    On March 17 or 18, 2004, Wilson approached Sergio Wray on the street and asked if he could move a car for him. Wray agreed and Wilson then drove him to the area near 78th Street and South Shore Drive and handed him the keys to a silver Jeep Grand Cherokee that Wilson and Milton had stolen earlier from an Alamo car rental facility. Wilson told Wray to follow him in the Jeep to 77th Street and Yates Boulevard, but after losing sight of Wilson's vehicle, Wray decided to keep the Jeep.

¶ 5    On the evening of March 22, 2004, Wray was watching movies with Lamar Murphy and Deon Gardner at Murphy's apartment at 6926 South Michigan Avenue. Around 9 p.m., Wray asked Murphy to drive him and Gardner in the Jeep to Gardner's house to get more movies.

As they pulled away from the curb, a white car traveling the wrong way on Michigan Avenue approached the Jeep and stopped. Milton exited the passenger's seat of the white car, pulled out a gun and ordered the men out of the Jeep. Milton fired two shots at Murphy and Wray as they exited through the driver's door and ran. Milton then got into the driver's seat and ordered Gardner, who was in the backseat, to exit the Jeep. As Gardner exited the vehicle, Milton shot him once in the back and then twice after he had fallen to the ground.

¶ 6    Evidence introduced at trial, including an inculpatory videotaped statement by Wilson,[1] showed that earlier that day Wilson saw the Jeep near 69th and Cottage Grove. Wilson contacted Milton on his cell phone and told Milton he was following the Jeep and that Milton should come with an extra set of keys to retrieve the vehicle. Wilson then called his cousin to give Milton a ride. Wilson followed the Jeep to 69th and Michigan, where he observed the occupants exit the vehicle and enter a building. In the videotaped statement, Wilson acknowledged that he knew Milton carried a gun in such situations and admitted that he thought Milton would bring a gun to retrieve the Jeep. He also stated that when he later called Milton on his cell phone to tell him to hurry, Milton stated that he had his "blow on [him]." Wilson stated that a "blow" was a gun. According to Wilson's statement, he observed Milton's arrival in the Jeep and his initial two shots at Murphy and Wray. As Wilson drove away, he looked in his rearview mirror and observed Milton shoot Gardner once as he exited the Jeep and twice as he lay on the ground.

¶ 7    Wilson testified at trial and, contrary to his videotaped statement, claimed that he did not observe Milton shoot Gardner. Wilson testified that he was with his girlfriend, Tiffany Taylor, and her children at a McDonald's when he saw the Jeep drive by. He stated that Taylor was with him in the car when he called Milton and drove to the area of 69th and Michigan, and that they left before Milton arrived. Over defense counsel's objections, Wilson admitted that he did not know where Taylor was during trial.

¶ 8    On appeal, appellate counsel filed a motion for leave to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing that there were no issues of merit on appeal. *People v. Wilson*, No. 1-08-2836 (2010) (unpublished order under Supreme Court Rule 23). In his *pro se* response, Wilson argued, *inter alia*, that trial counsel was ineffective for failing to call Taylor to testify despite his repeated requests for counsel to do so. *Id.* at 11. In affirming Wilson's conviction on appeal, this court rejected defendant's arguments regarding Taylor, concluding that defense counsel "made a conscious decision" not to call Taylor as a witness, which was a matter of trial strategy, generally immune from an ineffective assistance claim. *Id.* at 11-12.

¶ 9    Defendant subsequently filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). Wilson's petition asserted that he was denied effective assistance of trial counsel because counsel failed to (1) assure that police had the proper paperwork to remove him from the county jail for questioning, (2) investigate the number of stolen cars and trucks in Wilson's neighborhood to negate law

---

[1]Wilson's motion to suppress his statement on the ground that it was coerced was denied after a pretrial evidentiary hearing.

enforcement's stated reason for questioning Wilson, (3) interview or call Taylor as an alibi witness, and (4) move to sever Wilson's trial from Milton's. Wilson further claimed that he was convicted of an offense not charged in the indictment and was denied effective assistance of appellate counsel in his direct appeal.

¶ 10    Attached to Wilson's petition was a signed and notarized affidavit from Taylor. In the affidavit, Taylor attested that on March 22, 2004, she was with defendant from 4 p.m. until 11 p.m. At one point, Taylor, Wilson and their children went to a McDonald's restaurant at 79th and Phillips where Wilson observed the Jeep drive by and told her it was Milton's. As Taylor and Wilson followed the Jeep, Wilson contacted Milton on his cell phone and put it on speaker. Taylor heard Wilson tell Milton to come to 69th and Michigan and bring the extra set of keys for the Jeep. According to Taylor, she and Wilson left the area before Milton arrived.

¶ 11    The circuit court dismissed the petition, determining that all of the issues raised in Wilson's petition were barred by *res judicata*, having been raised and settled on direct appeal. The court determined that Wilson's claims had no arguable basis in law and that accordingly Wilson was not entitled to proceed to the second stage of the postconviction relief process with appointed counsel. Wilson timely filed this appeal.

¶ 12                                         ANALYSIS

¶ 13    On appeal, Wilson contends that Taylor's affidavit presents an arguable claim that his trial attorney was ineffective in failing to present Taylor as a witness because Taylor's version of events would have corroborated his trial testimony. The State responds that the circuit court correctly dismissed Wilson's petition based on *res judicata* because this court previously rejected on direct appeal the same argument Wilson now raises.

¶ 14    The Act provides a remedy for defendants who have suffered a substantial denial of their federal or state constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). At the first stage of postconviction review, the circuit court independently reviews the petition to determine whether it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2010). A petition may be dismissed under this standard only if it has no arguable basis either in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). Summary dismissal of a postconviction petition at the first stage is reviewed *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 15    If the petition survives first stage review, it proceeds to the second stage, where counsel may be appointed to aid an indigent defendant, and the State will be allowed to file responsive pleadings. 725 ILCS 5/122-4, 122-5 (West 2010); *Hodges*, 234 Ill. 2d at 10-11. To advance beyond the second stage, the petition and any accompanying documentation must make a "substantial showing" of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). Upon such a finding, the circuit court conducts an evidentiary hearing on the defendant's claim. 725 ILCS 5/122-6 (West 2010).

¶ 16    A postconviction petition may be dismissed at the first stage where the defendant's claim is barred by *res judicata*. *People v. Blair*, 215 Ill. 2d 427, 450 (2005). *Res judicata* precludes a claim if it has been previously raised and decided on direct appeal. *Id.* at 443-44. It is

axiomatic that any direct appeal is confined to the contents in the trial record. See, *e.g.*, *People v. Newbolds*, 364 Ill. App. 3d 672 (2006) (noting that if supporting facts are not part of trial record, they may not be considered by the reviewing court on direct appeal). Accordingly, an exception to barring a claim based on *res judicata* in a first-stage postconviction proceeding applies "where [the] facts relating to the claim do not appear on the face of the original appellate record." *Blair*, 215 Ill. 2d at 450-51; *People v. Harris*, 206 Ill. 2d 1, 13 (2002); *People v. Mahaffey*, 194 Ill. 2d 154, 171 (2000).

¶ 17    The record on direct appeal establishes that counsel considered presenting Taylor as a witness but chose not to do so. The details of Taylor's potential testimony as set out in the affidavit are not part of that record, and it also is not clear from the record that counsel knew the substance of Taylor's account. Therefore, the facts relating to Wilson's claim are outside the direct appeal record because the facts derive from the contents of Taylor's affidavit attached to Wilson's postconviction petition. For that reason, we find *res judicata* does not bar Wilson's instant postconviction claim.

¶ 18    The State contends that Taylor's affidavit "only provides *details* as to what her testimony would have allegedly included." Indeed, that is precisely why Taylor's attestations meet the standard for relaxation of the *res judicata* doctrine, which allows review of a previously raised point "where *facts relating to the claim* do not appear on the face of the original appellate record." (Emphasis added.) (Internal quotation marks omitted.) *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002). Although Wilson argued on direct appeal that counsel should have presented Taylor as a witness, and the claim therefore was part of his appeal, the record before the court at that time did not contain the facts of Taylor's potential testimony as stated in her affidavit.

¶ 19    We find further support in *People v. Tate*, 2012 IL 112214, ¶ 22, in which our supreme court held that at a first-stage review of a postconviction petition, when considering a claim of ineffectiveness of trial counsel for failure to call certain witnesses, the court should not consider trial strategy. Here, as in *Tate*, Wilson's petition should advance to the second stage of review under the Act.

¶ 20    To succeed on a claim of ineffective assistance, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that such performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In the context of a first-stage postconviction claim, a defendant need only show that he can arguably meet those two standards, *i.e.*, it is *arguable* that his counsel was deficient and it is *arguable* that the outcome of his case would have been different absent the deficient representation. *Hodges*, 234 Ill. 2d at 17.

¶ 21    To establish counsel's deficient performance, a defendant must overcome a strong presumption that the challenged action or inaction was a matter of sound trial strategy, and whether to call a particular witness to testify on a defendant's behalf falls under that category of virtually unchallengeable decisions, as this court noted in its order on direct appeal. *Wilson*, slip op. at 11-12. According to Wilson's statement to investigators, he told Milton where the Jeep was located and that he knew Milton was bringing a weapon. Wilson also told investigators that he observed the shooting through his rearview mirror as he drove

away. However, at trial, Wilson disavowed that confession, saying he was physically coerced into making that statement.

¶ 22      Applying the *Hodges* standard, it is at least arguable that defendant's trial counsel was ineffective in failing to present Taylor as a witness, given the potential testimony set out in her affidavit. Taylor attested she was in the car with Wilson and heard Wilson and Milton converse via speaker phone. She attested that Wilson told Milton the vehicle's location and heard him tell Milton to bring the second set of keys for the Jeep. Taylor further attested that they left the area before Milton arrived. Therefore, Taylor's testimony could have corroborated defendant's trial testimony that he did not facilitate the crime and only told Milton where to retrieve the vehicle.

¶ 23      In conclusion, although the circuit court correctly determined that the majority of the issues raised in the petition were previously raised and decided, *res judicata* does not bar Wilson's postconviction claim because Wilson's petition presents an arguable claim that his counsel was ineffective in failing to present Taylor's testimony regarding Wilson's actions prior to the shooting.

¶ 24      Accordingly, the circuit court's summary dismissal of the petition is reversed, and the petition is remanded for further proceedings under the Act.

¶ 25      Reversed and remanded.