No. 3--09--0408

Opinion filed March 17, 2011

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.  90--CF--185 |
| JOSEPH J. CICHON, | ) ) | |
| Defendant-Appellant. | ) ) | Honorable H. Chris Ryan, Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices McDade and Wright concurred in the judgment and opinion.

**OPINION**

Defendant, Joseph Cichon, was indicted on 54 counts consisting of: aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse, and child pornography.  Pursuant to a plea agreement, defendant pled guilty to multiple counts in exchange for a 25-year sentence.  Defendant filed a petition for postconviction relief that was ultimately granted.  The State then refiled the charges against defendant and offered him a plea deal with a 25-year sentence.  He rejected

the offer and went to trial.  He was convicted and sentenced to 105 years.

After two unsuccessful postconviction petitions, the court allowed defendant to file a third petition for postconviction relief which advanced to a third-stage hearing.  He claimed that he received ineffective assistance of counsel in his original postconviction proceedings and at the subsequent arraignment.  He also claimed his due process rights were violated at the arraignment.  The trial court denied his petition.  On appeal, defendant raises only the two arguments concerning ineffective assistance of counsel.  We affirm the decision of the trial court.

FACTS

I. Original Proceedings

In 1990 and 1991, the State charged defendant with 54 counts consisting of: aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse, and child pornography.  Pursuant to a negotiated plea agreement, he pled guilty to six counts of aggravated criminal sexual assault, three counts of Class 1 felony child pornography and three counts of Class 3 felony child pornography; the State dropped the remaining charges.  The court sentenced him to the agreed-upon sentence of 25 years.  The victims' families approved of the deal to avoid putting the children through a trial.

II. Defendant Hires Geis

2

In 1994, defendant hired James Geis to file a postconviction petition, claiming the attorney who represented defendant in the original plea negotiations and sentencing had a conflict of interest. During the course of that representation, Geis explained to defendant the possible consequences if he chose to have his original guilty plea vacated. Geis believed defendant could possibly receive a 30-year sentence if he was retried, but believed that it was unlikely defendant would receive a sentence greater than his original 25 years. This advice is documented in a letter that Geis sent to defendant.

However, Geis later told defendant that it was possible that any sentences he received would have to be served consecutively and could lead to a much longer sentence than the one he was serving. Geis explained that the prosecutor in charge, Timothy Huyett, was going to refile all 54 counts if defendant vacated his guilty plea. At some point before his original guilty plea was vacated, defendant met with Geis and Huyett. Huyett explained that he was going to seek a sentence in excess of 100 years.

In open court on the day the trial court granted defendant's petition, Geis stated that he had explained to defendant that it was possible he would face consecutive sentencing and receive a much longer sentence than his original sentence. Huyett also explained that defendant would face a maximum sentence of 60 years if he chose to go to trial again. After hearing both

3

statements, defendant still chose to go forward with his petition. The trial court granted defendant's petition and vacated his original guilty plea and conviction. At this point, Geis's representation of defendant ended.

### III. Representation by Bute and Cappellini

After Geis withdrew, the court assigned public defenders Daniel Bute and Timothy Cappellini to represent defendant. Huyett spoke with Bute before the arraignment and offered defendant a sentence of 25 years if he would plead guilty. He indicated that the deal was only available for seven days. Prior to the arraignment, Bute and Cappellini tried to convince defendant that the 25-year term was an offer that he should accept. They provided case law to defendant and explained that because of recent interpretation of the statute by the Illinois Supreme Court, he would be subject to a much greater sentence if he went to trial.

Defendant was arraigned on the new charges within a week of his guilty plea being vacated. At the arraignment, Huyett clarified that he misspoke during the postconviction hearing where defendant's guilty plea and sentence were vacated when he said defendant was subject to a maximum sentence of 60 years. He clarified that the maximum sentence defendant could receive was 120 years. He also reiterated that the 25-year offer would only be available for a "short time." The court asked Bute if he would like the court to admonish defendant on the maximum

4

possible sentence and Bute declined.

Bute and Cappellini were unable to convince defendant to accept the plea. Bute later testified defendant was sure he would win at trial. The case went to trial and defendant was convicted of four counts of aggravated criminal sexual assault, two counts of criminal sexual assault, one count of aggravated criminal sexual abuse, and three counts of Class 1 felony child pornography. He was sentenced to consecutive terms totaling 105 years. This court affirmed defendant's sentences on direct appeal.

## IV. Postconviction Proceedings

Defendant filed two unsuccessful postconviction petitions before he was granted leave to file the successive postconviction appeal which is the subject of this appeal. In this petition, he raised three issues, two of which he pursues with this court. First, he claims that his sixth amendment right to counsel was triggered when the State plea bargained with Geis in 1997 prior to the court vacating his sentence and guilty plea. He argues that Geis was ineffective because he advised defendant that he faced only 25 years and that he should reject the plea. Second, he argues that Bute was ineffective at the arraignment because he waived the court's offer to admonish defendant about the maximum possible penalty.

## V. Third-Stage Evidentiary Hearing

The petition advanced to stage-three proceedings. At the

5

evidentiary hearing, Geis, Cichon, Huyett, Bute and Cappellini testified.

Geis testified that he originally told defendant that if he were retried he would face at most 30 years. He said that he told defendant that because it was the law when they originally filed the postconviction petition. Geis also testified that once he became aware that it was possible that defendant might face an extended sentence, he never calculated exactly how much time defendant faced. Geis went on to say he had explained to defendant that if he were retried, it was possible he would face consecutive sentences instead of concurrent sentences and that he could receive a sentence much longer than 25 years. Geis testified that defendant was "quite intelligent." Geis said that not only had he explained to defendant that he might face an extended sentence but the trial judge also told defendant that he could receive consecutive sentences.

Geis explained that the law was changing between the time he started to represent defendant in 1994 and 1997 when the evidentiary hearing was held. Geis testified that he had explained to defendant that the law was changing and that the issue of mandatory consecutive sentences was before the Illinois Supreme Court at the time of the hearing. In response to a question by the court, Geiss testified that "[he] didn't think that [his representation] was ineffective assistance of counsel."

Defendant testified that the only information that he ever

6

received from Geis was that the longest sentence he could receive would be 30 years. He also said that Geis told him that the prosecutor would likely try to scare him into withdrawing his petition by telling him he faced a sentence much longer than 30 years. Defendant testified that when he heard Huyett or Bute talk about sentences longer than 30 years, he assumed they were posturing to get him to back down. Defendant testified that had he known he faced even the possibility of 60 years, he would have withdrawn his postconviction petition. He prosecuted his original postconviction petition in reliance on what Geis told him. He did admit that Bute told him that his understanding of the time he was facing was wrong. Defendant testified that Bute told him he faced 40 or 45 years. He said the only person who ever told him he could receive over 100 years was Huyett.

Following defendant's testimony, Huyett testified. He said that prior to the day the court granted defendant's petition, Huyett, Geis and defendant discussed what would happen if the petition was granted and the case went to trial. Huyett testified that he explained to defendant that he would receive 100 years or more at trial. According to Huyett, defendant responded by saying he was going to win at trial. Huyett also testified that on the day defendant's petition was granted, he explained to him that he faced a sentence of up to 60 years. Huyett explained that he corrected that mistake at the arraignment when he explained that the defendant could receive up

7

to 120 years.

Following Huyett, Bute testified. He said that after he was appointed, he contacted Huyett to see if he would still offer 25 years. Huyett offered a 25-year deal if defendant accepted in the next seven days. Bute said he told defendant that he could not give him an exact length of sentence he could get at trial because he had not seen the evidence yet. However, he did tell him that given the charges he could get up to 80 years. Bute described the 80-year figure as just a ballpark figure.

Bute testified that defendant had a letter from Geis and believed he could not get more than his original sentence. Bute testified that Cappellini brought case law that showed defendant could get more than 25 years. Bute testified that they could not convince defendant to take the 25 years. Bute testified that defendant "wasn't going to accept 25 years." Bute said he tried to get less than 25 years from Huyett but could not.

Cappellini was the final witness to testify. He testified that he researched the potential sentence that defendant could receive and tried to convince defendant that he should take the 25-year offer from Huyett. Cappellini said that defendant told him he was wrong about the potential sentence so Cappellini showed him the actual case law and read portions of it, explaining that defendant did face a sentence much longer than 25 years. When asked who made the decision not to accept the 25-year deal, Cappellini testified that defendant made the decision.

8

Cappellini said that he and Bute tried to convince defendant for between 30 and 45 minutes, but defendant would not accept the 25-year deal.

The court denied the petition. The trial court found that prior to the court granting defendant's first petition, there were some negotiations, discussions and advice given by Geis regarding potential plea negotiations that might occur if defendant decided to vacate his original guilty plea. The court also found that Geis originally told defendant that he was only subject to 30 years, should he go to trial and be convicted.

The trial court found that Geis informed defendant that the supreme court was reviewing the issue of mandatory consecutive and concurrent sentences. The court went on to say that although Geis had not sent a letter to defendant explaining the possibility of consecutive sentencing, it was explained in open court in front of defendant and he still chose to proceed.

The court also found that prior to the final hearing during which defendant's original guilty plea and sentence were vacated, Huyett, Geis and defendant had a meeting. Huyett made it clear that it was his position that defendant faced 100 years or more by vacating his original plea. The court said that in addition to this meeting, defendant met with Bute and Cappellini and they told him he was looking at up to 80 years.

The court found that Geis may have been ineffective originally because of the letter he sent, but that any deficiency

9

was cured by the discussion between defendant, Huyett and Geis. The court also said that it found no reasonable reliance on Geis by defendant. The court said it found no ineffective assistance by Bute after he began representation of defendant.

ANALYSIS

We review fact-finding and credibility determinations by the trial court in a stage-three postconviction proceeding for manifest error. *People v. Coleman*, 183 Ill. 2d 366, 384 (1998). A manifest error is one that is clearly evident, plain, and indisputable. *People v Green*, 218 Ill. App. 3d 71, 75 (1991). Defendant alleges a sixth amendment ineffective assistance of counsel claim. In *People v. Albanese*, 104 Ill. 2d 504, 526 (1984), the supreme court adopted the ineffective assistance of counsel test from *Strickland v. Washington*, 466 U.S. 668 (1984).

A petitioner shows ineffective assistance of counsel when he shows first "that counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to 'deprive the defendant of a fair trial, a trial whose result is reliable.' [Citation.]" *People v. Albanese*, 104 Ill. 2d at 525. The petitioner must also show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotations marks omitted.) *People v. Albanese*, 104 Ill. 2d at 525.

The analysis can proceed in any order. "If it is easier to

10

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  (Internal quotation marks omitted.) *People v. Albanese*, 104 Ill. 2d at 527.

We now review the trial court's decision that defendant failed to prove both elements required to show ineffective assistance of counsel.

### I. Alleged Ineffective Assistance by Geis

Defendant argues that Geis was ineffective because he originally told him that he was not in danger of receiving more the a 30-year sentence.  The State raises two arguments in support of the court's decision.  First, that Geis did not represent defendant in any proceeding where he was convicted, so any potential ineffective assistance is not cognizable in this proceeding.  Second, that even if Geis's actions are cognizable in this proceeding, Geis's actions were reasonable.

### A. Not Cognizable Here

Section 122-1(a) of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/100-1 *et seq.* (West 2008)) provides that a person imprisoned in the penitentiary can file a petition for postconviction relief if he claims that: "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both."  725 ILCS 5/122-1(a)(1) (West 2008).

11

Geis never represented defendant in a proceeding that resulted in defendant's conviction.  Geis represented defendant in postconviction-relief proceedings, the result of which was that defendant's previous guilty plea was vacated.  At the end of the hearing, Geis indicated that his representation of defendant then terminated.  The result of the proceeding was that defendant was "unconvicted."  Postconviction hearings are intended to provide a collateral remedy for constitutional violations that occur at trial or sentencing.  *People v. Woods*, 193 Ill. 2d 483, 489 (2000).  Any violation defendant alleges by Geis is not reviewable in a postconviction hearing.

Defendant argues that once Huyett discussed possible outcomes of defendant's postconviction proceedings, he created bifurcated proceedings: one, the postconviction proceedings, and the other, the second criminal proceeding against defendant.  Defendant argues that the second criminal proceeding did result in his conviction and is cognizable in this proceeding.  We disagree.

There could be no second criminal proceeding against defendant while his original guilty plea and sentence remained valid.  Huyett's actions prior to the court's vacating defendant's guilty plea and sentence cannot have been plea bargaining because it was impossible for the State to bring charges against defendant due to the double jeopardy clause of the United States Constitution.  U.S. Const. amend. V.  Huyett

12

was trying to explain to defendant that it was not a good idea to have his original sentence and plea vacated because the outcome would likely be a much longer sentence.  He was unable to bargain with defendant because it was impossible at that point for Huyett to charge defendant with anything.  Therefore, Geis never represented defendant in a proceeding that is cognizable in a postconviction proceeding.  That is, under no stretch of the imagination can we consider a postconviction proceeding that resulted in defendant's conviction being vacated as "proceedings which resulted in [defendant's] conviction."  725 ILCS 5/122-1(a)(1) (West 2008).

## B. Even if Cognizable, No Error Occurred

Even if defendant's claim were cognizable in this proceeding, the trial court's decision was not manifest error. The trial court found that any error founded on Geis's letter was cured when defendant was told in open court that it was possible he could receive a sentence much greater than 25 years.

The court found no ineffective assistance because defendant was ultimately given the correct information.  The trial court focused on the statements to defendant that it was possible to get a larger sentence and that the supreme court was reviewing the issue, but it was possible that he would face mandatory consecutive sentences.  We find no error in the trial court's decision.

## C. "But For" Causation

13

Defendant's actions speak much louder than his words.  When defendant knew that he faced the possibility of receiving a sentence much longer than 25 years, he still chose not to accept the plea offer of 25 years.  Defendant argues that, but for the actions of Geis, he would only have a 25-year sentence.  Yet, it is clear to this court that defendant did know by his arraignment that he faced up to 120 years and he still rejected the deal the State offered.  Even assuming, *arguendo*, that Geis's actions were not objectively reasonable, defendant still cannot show that Geis's actions prejudiced him.  Geis got defendant what defendant wanted: his conviction vacated.  Later, with full knowledge of what could happen, defendant rejected another offer of 25 years.

II. Alleged Ineffective Assistance by Bute and Cappellini

Defendant argues that when Bute and Cappellini waived having the judge admonish defendant as to the maximum possible sentence if he was convicted on all counts, they provided ineffective assistance of counsel.  Defendant must show that this decision fell below an objectively reasonable standard.  See *Albanese*, 104 Ill. 2d at 525.

The trial court found that defendant was aware that it was possible he would receive a much longer sentence than the 25 years offered by the State.  The trial court did not believe it was unreasonable to waive the court's offer to admonish defendant concerning the maximum penalty because the court found defendant was aware of the fact he faced a sentence over 100 years.

14

The record supports the trial court's finding. The evidence is clear that Huyett first informed defendant that he was looking at 60 years if he rejected the State's offer. He later corrected the 60 years to 120 years at the arraignment. Bute and Cappellini testified that they spent at least 30 minutes showing defendant case law and explaining that the 25-year offer was in his best interest because it was likely he would get much more time if he went to trial. There is no reason to believe that after all this, defendant would have changed his mind if the judge had told him the same thing again. Defendant rejected the offer because he thought he could win at trial.

We find no manifest error in the trial court's decision. The trial court was in the best position to make credibility and factual determinations and we will not second-guess those decisions.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

15