2023 IL App (2d) 210253-U
No. 2-21-0253
Order filed January 10, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Stephenson County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 05-CF-94 |
| | ) | 05-CF-95 |
| | ) | |
| HUNDLEY L. FORD, | ) | Honorable |
| | ) | Michael Paul Bald, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court properly denied defendant's *pro se* motion for leave to file a successive post-conviction petition where (1) the claims raised therein did not fall within the purview of the Post-Conviction Hearing Act, (2) the claims could have been raised in defendant's appeal from the denial of his original post-conviction petition, and (3) defendant did not establish the requisite cause and prejudice necessary for leave to file a successive post-conviction petition.

¶ 2   Defendant, Hundley L. Ford, appeals from an order of the circuit court of Stephenson County denying his *pro se* motion for leave to file a successive petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2020)). In the proposed successive

post-conviction petition, defendant asserted that the trial court abused its discretion during the proceedings on his original post-conviction petition by precluding him from developing a record to establish his claims. Notably, defendant argued that he was denied his right to "compulsory process" where the trial court (1) declined his request to subpoena the state's attorneys who prosecuted his case to testify about their alleged fabrication and use of false gunshot evidence and (2) declined to accept his proffer that the state's attorneys would testify that they knowingly fabricated and used the false gunshot evidence to charge and convict him, which proffer, according to defendant, the state's attorney stipulated to. On appeal, defendant contends that the trial court's decision to deny leave to file the successive post-conviction petition was improper because he demonstrated the requisite "cause" and "prejudice" necessary pursuant to section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2020)) for leave to file a successive post-conviction petition. We affirm.

¶ 3                                I. BACKGROUND

¶ 4      We have previously set forth the facts of this case in our decisions on defendant's direct appeal (see *People v. Ford*, No. 2-07-0678 (2009) (unpublished order under Supreme Court Rule 23)) and defendant's appeal from the denial of his original post-conviction petition (see *People v. Ford*, 2015 IL App (2d) 120929-U). We restate them here, along with any additional relevant facts, as necessary to place in context defendant's arguments in this appeal.

¶ 5      In August 2006, defendant was charged by amended information with one count of aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2004)), two counts of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2004)), one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2004)), and seven counts of attempted first-degree murder (720 ILCS 5/8-4, 9-1(a)(1) (West 2004)). The charges stemmed

from a shooting incident involving defendant, Wanda Ford (defendant's estranged wife), Jacqueline McAfee (Wanda's sister), and Alonzo Weekly (McAfee's boyfriend). The matter proceeded to a jury trial in January 2007.

¶ 6     At defendant's trial, the State presented evidence that Wanda and defendant are the parents of two children. The shooting occurred on March 28, 2005, when Wanda went to pick up the children from defendant's apartment. Wanda gave varying accounts of the circumstances surrounding the shooting, including the number of gunshots fired. At defendant's trial, Wanda testified on direct examination that she became upset when she discovered that defendant did not have the children ready when she came to pick them up. As Wanda prepared the children to leave, she observed defendant remove a gun from a pair of pants on the living room floor. At that point, Wanda "charged" at defendant and a physical struggle ensued. The struggle eventually moved to the bedroom where, according to Wanda, defendant threatened to kill her. Wanda testified that as she and defendant continued to wrestle, they fell onto a box spring and the gun discharged. Wanda ran out of the apartment after she discovered she had been struck by a bullet. Once outside, Wanda heard another gunshot. She proceeded to an awaiting car in which McAfee was the driver and Weekly was a passenger. Weekly opened the rear door from inside the car, and Wanda entered head first. Wanda then noticed defendant exiting the apartment. The next thing Wanda remembered was that the car had disappeared and she was lying in the street. Wanda then heard defendant call her name followed by a "click." Wanda testified that she "play[ed] dead" as she observed defendant flee the scene. Wanda also heard Weekly yell that he had been shot, and she saw the car with McAfee and Weekly crash into a nearby house.

¶ 7     Wanda further testified that she spoke to Officer Jennifer Manus of the Freeport Police Department on March 30, 2005. After being shown a transcript of the audio-taped interview with

Officer Manus, Wanda stated that she did not recall making the statements on the transcript. According to Wanda, Officer Manus did not write down her answers correctly. Wanda did admit to testifying at a preliminary hearing in April 2005. She identified State's exhibit PH13 as a hand-drawn diagram of defendant's apartment used at the preliminary hearing. An audiotape of Wanda's preliminary hearing testimony was played for the jury. At the preliminary hearing, Wanda testified that the gun discharged four times in defendant's apartment. The State marked exhibit PH13 where Wanda indicated those gunshots took place—two while Wanda was in the bedroom, one as she attempted to grab her daughter in the hallway outside the bedroom, and one as Wanda was descending the stairs on her way out of the apartment. Wanda also indicated at the preliminary hearing that two gunshots were fired when she was outside. Exhibit PH13 was admitted at defendant's trial without objection.

¶ 8    At defendant's trial, Wanda testified that she did not recall testifying at the preliminary hearing that four shots were fired inside the apartment. In addition, Wanda did not recall the State marking exhibit PH13 with the location of the gunshots. Nevertheless, after reviewing a portion of the transcript of the preliminary hearing, Wanda testified that two shots were fired while she and defendant were wrestling in the bedroom and that she got up after being hit by the second shot. Upon further questioning at trial, Wanda testified that there were two or three shots fired in the apartment: two in the bedroom and one while she was going down the stairs as she ran out the door.

¶ 9    On cross-examination, Wanda testified that at the beginning of the investigation, she lied about two aspects of the shooting to "get back" at defendant. Wanda originally related that (1) her hand was not on the gun when she and defendant were struggling in the apartment and (2) defendant shot at her as she reached for her daughter in the hallway. At defendant's trial, however,

Wanda indicated that both she and defendant had their hands on the gun while they wrestled and that defendant did not discharge the gun as she reached for her daughter. Nevertheless, Wanda acknowledged that everything else she said at the preliminary hearing was true, and she reiterated that the gun discharged twice in the bedroom. Moreover, Wanda testified that she was still in love with defendant, she had forgiven him for his actions on the night of the shooting, and she would like to get back together with him.

¶ 10 Officer Manus testified that she interviewed Wanda shortly after the shooting. During that interview, Wanda told Officer Manus that she was struck by the second gunshot as she was getting off the bed. Wanda stated that defendant fired a third shot as she was fleeing and two more shots by the time she reached McAfee's car. The tape of Officer Manus's interview with Wanda was played for the jury. Officer Jeff Mastroianni of the Freeport Police Department and Jean Thompson, a crime scene investigator with the Illinois State Police, assisted in processing defendant's apartment after the shooting. Officer Mastroianni noticed what appeared to be bullet holes in the front door to defendant's apartment. Thompson testified that one projectile was recovered from inside defendant's apartment and two projectiles were recovered from McAfee's car. Officer Manus related that the projectile recovered from inside defendant's apartment was found between the walls separating the bedroom from the hallway. Thompson also testified that she searched for a projectile in front of defendant's residence, but did not find one. She related, however, that, based on her crime scene experience, not all bullets related to a particular crime scene are recovered. Officer Mastroianni also testified that he has been to crime scenes where the police are unable to recover bullets.

¶ 11 Defendant testified that the gun used in the shooting contained only four bullets. He acknowledged that the gun "went off" once as he and Wanda were wrestling in the apartment.

Defendant further testified that he discharged the gun once as he was exiting the apartment. He testified that the last two shots were fired outside of the apartment when he "panicked," raised his gun, and discharged the weapon towards the car with McAfee and Weekly.

¶ 12    Following closing arguments, the jurors began deliberations. The jury returned verdicts finding defendant guilty of aggravated battery with a firearm, both counts of aggravated discharge of a firearm, unlawful possession of a weapon by a felon, and two counts of attempted first-degree murder. After denying defendant's motion for a new trial, the court sentenced defendant to concurrent terms of imprisonment of 35 years for attempted first-degree murder, 25 years for aggravated battery with a firearm, 12 years for unlawful use of a weapon by a felon, and 10 years for aggravated discharge of a firearm. Following the denial of his motion to reconsider sentence, defendant filed a notice of appeal.

¶ 13    On direct appeal, we affirmed defendant's convictions and sentences. *Ford*, No. 2-07-0678 (2009) (unpublished order under Supreme Court Rule 23). One of the issues defendant raised on direct appeal was that the State's "repeated use of Wanda Ford's prior claims that three shots were fired by the defendant inside the apartment, which its own police and forensic witnesses refuted, denied [him] due process." Specifically, defendant alleged that Wanda's prior claims that three shots were fired inside his apartment were contradicted by the State's witnesses who testified that only one bullet was recovered from inside his apartment. As a result, defendant argued that the State knowingly used false evidence to obtain his convictions, depriving him of a fair trial. Moreover, defendant suggested that the fact that only one projectile was recovered from his apartment supported his theory of the case, *i.e.*, he did not intentionally discharge the gun, but rather the gun inexplicably fired once while he and Wanda were wrestling over control of the firearm in the bedroom.

¶ 14    In rejecting defendant's claim, we noted that Wanda gave various, conflicting accounts of the number of shots discharged in defendant's apartment. *Ford*, No. 2-07-0678 (2009) (unpublished order under Supreme Court Rule 23). Because these accounts included a version that defendant discharged the gun three times in the apartment, we reasoned that the State's repeated reference to a three-gunshot theory could not be categorized as false. *Ford*, No. 2-07-0678 (2009) (unpublished order under Supreme Court Rule 23). Rather, it constituted "a reasonable inference from the evidence presented at trial." *Ford*, No. 2-07-0678 (2009) (unpublished order under Supreme Court Rule 23). In so holding, we noted that defense counsel acknowledged at trial that the number of shots fired in the bedroom was a "gray area." *Ford*, No. 2-07-0678 (2009) (unpublished order under Supreme Court Rule 23). We also noted that while the police only recovered one bullet from defendant's apartment, there was testimony that not every projectile discharged at a crime scene is always found. *Ford*, No. 2-07-0678 (2009) (unpublished order under Supreme Court Rule 23). Thereafter, defendant filed a petition for leave to appeal which was denied by the supreme court. *People v. Ford*, 236 Ill. 2d 518 (2010).

¶ 15    On or about February 16, 2010, defendant filed a *pro se* petition for relief pursuant to the Act (725 ILCS 5/122-1 *et seq*. (West 2010)). In his petition, defendant raised the following four claims: (1) he was denied due process and equal protection because the State fabricated gunshot evidence and knowingly used this perjured testimony to secure the charges and convictions against him; (2) he was denied due process and equal protection because the trial court abused its discretion by allowing the State to "mechanistically apply the Rules of Impeachment" to knowingly present to the jury as substantive evidence the gunshot evidence fabricated by the State; (3) he was denied the right to effective assistance of trial counsel because his attorney "failed to put the State's Case-in-Chief to any meaningful adversarial testing to uncover" the gunshot evidence fabricated and

knowingly used by the State to secure the charges against him and his convictions; and (4) he was denied the right to effective assistance of appellate counsel because appellate counsel failed to raise both "a Highly Meritorious Prosecutorial Misconduct issue" and the "meritorious issues" set forth in the first three sections of his post-conviction petition.

¶ 16    On March 18, 2010, the trial court summarily dismissed defendant's petition. Subsequently, the trial court granted defendant's amended motion to reconsider and appointed counsel to represent defendant. Thereafter, defendant filed a motion to dismiss counsel and proceed *pro se*, which the trial court granted. The State then filed a motion to dismiss the post-conviction petition. The trial court denied the State's motion, and the matter proceeded to a third-stage hearing.

¶ 17    Prior to the third-stage hearing, defendant filed a motion seeking to subpoena several individuals. Among these individuals were State's Attorney John Vogt and Assistant State's Attorney Joseph Lentz, the lawyers who prosecuted defendant's case. Defendant also filed a motion requesting a subpoena *duces tecum* compelling the production of certain exhibits, including PH13. At a hearing on defendant's motions, the trial court asked defendant what he expected the individuals he wished to subpoena to testify. Defendant responded in relevant part that Lentz would testify that he "fasif[ied]" PH13 at the preliminary hearing "by marking three gunshot locations in there knowing that they wasn't [*sic*] there and represented that to the Court *** as true to obtain probable cause to get the indictment [*sic*]." Defendant further stated that Lentz "allowed [Wanda] to testify that the gunshot evidence that he manufactured was, in fact, there." Defendant stated that Vogt would testify that, "after having full knowledge of the fact [that there was only one shot fired in the bedroom area], he introduced [PH13] *** to the jury—to obtain *** a conviction." In addition, defendant asserted that Vogt "knowingly used the false testimony about

the evidence that Mr. Lentz fabricated *** under the introduction of the admissibility of a prior statement *** knowing that it was perjured testimony."

¶ 18    Vogt objected to defendant's motions, explaining:

"Well, I don't think he's—he's given the Court anything that isn't on the record. I think—I think everything he said he's actually cited for the record. He's cited to the—First of all, there was a recorded statement of Wanda Ford that was introduced. That's a part of the record. There was a statement that she made or I think a recording of her testimony at a preliminary hearing. That's in. He wants the diagram [PH13]. That's already in evidence as far as I know. The arguments that either I made or Mr. Lentz made or anything of that nature is all in the record. So I guess we're just dealing with subpoenas now. I don't see any necessity to have anybody certainly come because everything he said is already there."

In response, defendant stated, "I concede to that, that everything is in the record. It's blatantly on the record. You can see it." Thereafter, the trial court denied the motion to subpoena witnesses, but granted the motion for a subpoena *duces tecum* with respect to the exhibits defendant requested.

¶ 19    At the third-stage hearing, both defendant and the State argued their respective positions. Relevant here, defendant asserted that the locations of the gunshots shown on exhibit PH13 were falsified. Defendant focused on the bedroom area, emphasizing that because only one bullet had been recovered from the bedroom, the physical evidence established that only one gunshot had been fired in that room. Defendant therefore claimed that exhibit PH13, which showed four gunshot locations in the whole apartment, including three in the bedroom area, was falsified. Defendant added that the State perpetuated this fraud by introducing Wanda's perjured testimony from the preliminary hearing. Defendant also claimed that the argument he was making was

different from the issues raised on direct appeal because he was not focusing on Wanda's testimony, but rather on exhibit PH13.

¶ 20　On June 24, 2011, the trial court entered an order denying defendant's petition for post-conviction relief. Initially, the court rejected defendant's claim that exhibit PH13 was a falsified document. The court noted that the locations of the gunshots depicted on the exhibit were based in part on Wanda's testimony, and, therefore, the State's position was a reasonable inference based on the evidence presented at trial. The court also found that defendant's claim that he was denied due process and equal protection because the State fabricated gunshot evidence and knowingly used this perjured testimony to secure the charges and convictions against him was already raised on direct appeal and therefore barred by *res judicata*. Next, the court rejected defendant's claim that the court allowed the State to misapply the rules of impeachment and knowingly present to the jury as substantive evidence the fabricated gunshot evidence. The court interpreted this allegation to be a claim that the forensic evidence presented at trial refuted the State's theory regarding the number of gunshots fired in the apartment. The court noted, however, that the State presented evidence that not every projectile discharged at a crime scene is recovered. In addition, the court found that this issue was already raised on direct appeal and therefore barred by *res judicata*.

¶ 21　Likewise, the trial court rejected defendant's claims of ineffective assistance of counsel. The court interpreted defendant's claims of ineffective assistance of trial counsel to be that his attorney failed to conduct a pre-trial investigation of the allegedly fabricated gunshot evidence. While acknowledging that the failure to adequately prepare for trial could form the basis for an ineffective assistance claim, the court determined that defendant failed to show any prejudice. In support, the court reasoned that there was pre-trial testimony and statements from Wanda that

would support the State's position and defendant presented no additional evidence at the third-stage hearing to support his allegation that the State fabricated evidence about the number of gunshots fired. Finally, the court found defendant's claim of ineffective assistance of appellate counsel to be without merit because the issues that appellate counsel allegedly failed to raise were, in fact, raised on direct appeal.

¶ 22    Subsequently, defendant filed a motion to reconsider the trial court's ruling. The trial court denied the motion to reconsider, after which defendant filed a timely notice of appeal. On appeal to this court, defendant raised five issues. Four of the issues were couched as claims of ineffective assistance of appellate counsel. The last issue alleged that the trial court abused its discretion by (1) knowingly admitting Wanda's "perjured" testimony at the preliminary hearing that there were four gunshot locations in the apartment and (2) knowingly admitting the falsified document (PH13) on which the prosecution drew four gunshot locations in support of its theory because the physical evidence did not support this theory. We rejected defendant's arguments and affirmed the trial court's denial of his petition for post-conviction relief. *Ford*, 2015 IL App (2d) 120929-U. In our decision, we noted, among other things, that defendant's claims were premised on an issue that was previously addressed on direct appeal and found to lack merit, *i.e.*, that the State fabricated the theory that he discharged the gun four times in his apartment and then supported this theory by presenting to the jury exhibit PH13 and Wanda's preliminary hearing testimony. *Ford*, 2015 IL App (2d) 120929-U, ¶¶ 25-36. Moreover, we observed that defendant pointed to no evidence developed at the third-stage hearing that supported his theory that the State fabricated evidence that four gunshots were fired. *Ford*, 2015 IL App (2d) 120929-U, ¶ 34. Thereafter, defendant filed a petition for leave to appeal which was denied by the supreme court. *People v. Ford*, 2015 IL 119662.

¶ 23    On September 16, 2020, defendant filed a motion for leave to file a successive petition for relief pursuant to section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2020)) along with a proposed successive post-conviction petition. On November 20, 2020, defendant filed a supplement to the motion for leave to file the successive petition. In the proposed successive post-conviction petition and supplement, defendant asserted that the trial court abused its discretion during the proceedings on his original post-conviction petition by precluding him from developing a record to establish his claims. Notably, defendant argued that his original post-conviction petition raised claims of prosecutorial misconduct for fabricating and knowingly using false gunshot evidence as depicted in PH13. According to defendant, he was denied his right to "compulsory process" during the proceedings on his original post-conviction petition because the trial court (1) declined his request to subpoena Vogt and Lentz (the state's attorneys who prosecuted his case) to testify about their fabrication and use of this false evidence and (2) declined to accept his proffer that the state's attorneys would testify that they knowingly fabricated and used false gunshot evidence to charge and convict him, which proffer, according to defendant, Vogt stipulated to. Defendant contended that he demonstrated cause for his failure to bring these claims in his initial post-conviction proceeding, explaining that "[i]t was impossible to have brought these claims in the prior petition, as they happened during the first post-conviction proceeding." Defendant also contended that he demonstrated prejudice resulting from the failure to bring the claims earlier because they "so infected [his] judgment of conviction that [his] conviction violated due process."

¶ 24    On February 25, 2021, the trial court entered an order denying defendant's request for leave to file a successive post-conviction petition. The court concluded that defendant did not show the cause and prejudice required to file a successive petition. See 725 ILCS 5/122-1(f) (West 2020). Specifically, the trial court determined that "the factual assertions relied upon by [defendant] in

the instant petition were available to him at the time his initial petition was filed" and defendant "failed to identify any objective factor which impeded his efforts to raise the claim in the earlier proceeding(s)." To the contrary, the trial court noted that these same claims were argued and denied as part of the earlier post-conviction hearing, a decision this court affirmed on appeal. Additionally, the trial court determined that defendant made no showing that "the absence of the claim now presented so infected the trial that his resulting conviction violated due process."

¶ 25     Subsequently, defendant filed a motion to reconsider the trial court's ruling. On April 30, 2021, the trial court denied defendant's motion. Thereafter, defendant filed a *pro se* notice of appeal.

¶ 26                                    II.  ANALYSIS

¶ 27                         A. The Post-Conviction Hearing Act

¶ 28     The Act provides a method by which a criminal defendant may file a petition challenging his or her conviction or sentence based on a substantial violation of constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2020); *People v. Edwards*, 2012 IL 111711, ¶ 21. Proceedings under the Act are collateral to proceedings on direct appeal and focus on constitutional claims that have not and could not have been previously adjudicated. *People v. Buffer*, 2019 IL 122327, ¶ 12. For that reason, the doctrine of *res judicata* bars issues that were raised and decided on direct appeal, and forfeiture precludes issues that could have been raised but were not. *People v. Dorsey*, 2021 IL 123010, ¶ 31.

¶ 29     The Act contemplates the filing of only one post-conviction petition. 725 ILCS 5/122-1(f) (West 2020); *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002); see also 725 ILCS 5/122-3 (West 2020) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived"). Because successive petitions impede the finality of criminal

litigation, that statutory bar will be relaxed only "when fundamental fairness so requires." *Pitsonbarger*, 205 Ill. 2d at 458. The supreme court has identified two such instances. *Edwards*, 2012 IL 1117111, ¶ 22. The first basis is when the defendant raises a claim of actual innocence. *Edwards*, 2012 IL 111711, ¶¶ 22-23. The second basis is the cause-and-prejudice test set forth in section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2020)). Here, only the cause-and-prejudice test is at issue. Under that test, a defendant may obtain leave of court to file a successive post-conviction petition if he or she demonstrates *both* "cause" for the failure to raise the claim in the initial petition *and* that "prejudice" resulted from the failure to raise the claim. *Dorsey*, 2021 IL 123010, ¶ 32; *People v. Britt-El*, 206 Ill. 2d 331, 339 (2002). "Cause" is shown by a defendant identifying an objective factor that impeded his or her ability to raise a specific claim during the initial post-conviction proceeding. 725 ILCS 5/122-1(f) (West 2020); *Dorsey*, 2021 IL 123010, ¶ 32. "Prejudice" is shown by demonstrating that the claim not raised during the initial proceeding so infected the trial that the resulting conviction or sentence violated due process. 725 ILCS 5/122-1(f) (West 2020); *Dorsey*, 2021 IL 123010, ¶ 32.

¶ 30    A trial court should deny leave to file a successive post-conviction petition when it is clear from a review of the successive petition and supporting documents that the claims raised fail as a matter of law or are insufficient to justify further proceedings. *Dorsey*, 2021 IL 123010, ¶ 33. In other words, the court must determine whether the defendant has made a *prima facie* showing of cause and prejudice. *People v. Bailey*, 2017 IL 121450, ¶ 24. We review *de novo* the denial of a motion for leave to file a successive petition under the Act. *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 33. With these principles in mind, we turn to defendant's claims of error.

¶ 31                                B. Defendant's Claims

¶ 32    On appeal, defendant argues that the trial court improperly denied his request for leave to file a successive post-conviction petition. Specifically, defendant claims that he was denied due process during the proceedings on his original post-conviction petition because the trial court (1) declined to consider Vogt's "judicial admission that false evidence (States [*sic*] Exhibit PH13) and perjury were knowingly used to obtain his informations [*sic*] and conviction" and (2) disregarded his right to "compulsory process" for Vogt and Lentz, thereby precluding his ability to develop evidence in support of his post-conviction petition. Defendant asserts that he established cause for not raising these claims earlier since the basis of the claims stems from actions taken by the trial court at the proceedings on his initial post-conviction petition. Defendant further asserts that he established prejudice because the trial court's rulings amounted to violations of due process.

¶ 33    The State's response is threefold. First, the State argues that we should affirm the trial court's decision as a matter of law because the claims in defendant's proposed successive post-conviction petition do not fall within the purview of the Act. Second, the State contends that even if defendant's claims were properly brought under the Act, they are forfeited because they could have been raised in defendant's appeal from the trial court's denial of his original post-conviction petition and were not. Third, the State argues that defendant's arguments fail on the merits because the claims are barred by *res judicata* and are meritless, and, therefore, he cannot establish the requisite cause or prejudice necessary to file a successive post-conviction petition.

¶ 34                    1. Claims Cognizable Under the Act

¶ 35    We first address the State's argument that the trial court's decision should be affirmed as a matter of law because the claims in defendant's proposed successive post-conviction petition do not fall within the purview of the Act. Section 122-1(a)(1) of the Act (725 ILCS 5/122-1(a)(1) (West 2020)) provides that any person imprisoned in the penitentiary may institute a proceeding

under the Act if he or she asserts that "*in the proceedings which resulted in his or her conviction* there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." (Emphasis added.) Thus, allegations of constitutional violations unrelated to the proceedings which resulted in the conviction are not reviewable under the Act. See, *e.g.*, *People v. Woods*, 193 Ill. 2d 483, 489 (2000) (observing that the Act "is intended to provide a remedy for constitutional violations that occur at trial or sentencing"); *People v. Ferree*, 40 Ill. 2d at 485 (holding that constitutional claims which were not related to the proceeding which resulted in the petitioner's conviction are not reviewable under the Act); *People v. Cichon*, 408 Ill. App. 3d 1020, 1026-27 (2011) (holding that the defendant's claim that post-conviction counsel was ineffective was not reviewable in a successive post-conviction proceeding); *People v. Howard*, 94 Ill. App. 3d 797, 802 (1981) (holding that alleged incompetency of trial counsel in failing to file a notice of appeal after being requested to do so did not pertain to proceedings which resulted in the defendant's conviction and therefore the defendant's contention that trial counsel was incompetent for such failure was not reviewable under the Act); *People v. Woods*, 10 Ill. App. 3d 6 (1973) (abstract of opinion) (holding that where none of the allegations of constitutional violation raised in post-conviction petition were related to proceedings which resulted in the particular conviction constituting the basis for the defendant's imprisonment, such allegations were not reviewable under the Act); *People v. Buford*, 4 Ill. App. 3d 533, 533 (1972) (holding that allegations that counsel failed to timely file the trial record, briefs, and abstracts on appeal to the supreme court thereby causing the defendant to lose his rights to appeal did not pertain to the proceedings that resulted in his conviction and, therefore, were not reviewable under the Act).

¶ 36     In this case, defendant alleged in his proposed successive post-conviction petition and supplement that the trial court abused its discretion *during the proceedings on his original post-*

*conviction petition* by precluding him from developing a record to establish his claims. Notably, defendant argued that his original post-conviction petition raised claims of prosecutorial misconduct for fabricating and knowingly using false gunshot evidence as depicted in PH13. According to defendant, he was denied his right to "compulsory process" during the proceedings on his original post-conviction petition because the trial court (1) declined his request to subpoena Vogt and Lentz to testify about their alleged fabrication and use of this false evidence and (2) declined to accept his proffer that the state's attorneys would testify that they knowingly fabricated and used false gunshot evidence to charge and convict him, which proffer, according to defendant, Vogt stipulated to. These claims relate to rulings made by the trial court during the third-stage proceedings on his original post-conviction petition. Because the claims defendant raises do not concern the proceedings which resulted in his conviction, they are not reviewable under the Act. See *Ferree*, 40 Ill. 2d at 485; *Cichon*, 408 Ill. App. 3d at 1026-27; *Howard*, 94 Ill. App. 3d at 802; *Buford*, 4 Ill. App. 3d at 533. Therefore, the trial court did not err in denying defendant's motion for leave to file a successive post-conviction petition.

¶ 37                                    2. Forfeiture

¶ 38     Even if defendant's claims were properly brought under the Act, we agree with the State that they are forfeited because they could have been raised in defendant's appeal from the trial court's denial of his original post-conviction petition and were not. In a post-conviction proceeding, the common law doctrines of *res judicata* and forfeiture operate to bar claims that were or could have been adjudicated in a prior proceeding. *People v. Blair*, 215 Ill. 2d 427, 443 (2005); *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 106. *Res judicata* bars consideration of issues that were previously raised and decided in a prior proceeding. *Blair*, 215 Ill. 2d at 443; *Ayala*, 2022 IL App (1st) 192484, ¶ 106. Forfeiture bars claims that could have been raised in a

prior proceeding but were not. *Blair*, 215 Ill. 2d at 443-44; *Ayala*, 2022 IL App (1st) 192484, ¶ 106.

¶ 39    As noted, in his proposed successive post-conviction petition, defendant claims that the trial court abused its discretion during the proceedings on his original post-conviction petition because it (1) declined his request to subpoena the state's attorneys who prosecuted his case to testify about their alleged fabrication and use of false evidence and (2) declined to accept his proffer that the state's attorneys would testify that they knowingly fabricated and used false gunshot evidence to charge and convict him, which proffer, according to defendant, Vogt stipulated to. These claims relate to rulings made by the trial court during the third-stage proceedings on his original post-conviction petition. Yet, defendant did not raise any claims related to these alleged errors in the appeal of the order denying his original *pro se* petition for post-conviction relief. See *Ford*, 2015 IL App (2d) 120929-U, ¶¶ 24-36 (discussing the five issues that defendant raised in his appeal from the denial of his original post-conviction petition). Consequently, even if these claims were properly brought under the Act, they are forfeited because they could have been raised in a prior appeal. See *Blair*, 215 Ill. 2d at 443-44 (noting that in an initial post-conviction proceeding, the common law doctrines of *res judicata* and forfeiture operate to bar the raising of claims that were or could have been adjudicated in a prior appeal); *Ayala*, 2022 IL App (1st) 192484, ¶ 108 (holding that because the defendant could have raised claim in his initial post-conviction petition, but did not, he forfeited claim raised in proposed successive post-conviction petition); *People v. Doris*, 319 Ill. App. 3d 579, 582 (2001) (holding that the defendant's claim in successive post-conviction petition that statute allowing dismissal of frivolous post-conviction petition was unconstitutional was barred by *res judicata*, as trial court dismissed the defendant's first post-conviction petition as frivolous, such that the defendant could have but

failed to allege the constitutional argument during his appeal from the first post-conviction petition).

¶ 40    Defendant suggests that an order entered by this court on January 24, 2014, denied him the opportunity to raise anything in the appeal of the order denying his original post-conviction petition beyond what had been raised in his *pro se* response to a motion by appellate counsel to withdraw on appeal. Defendant mischaracterizes our order. The order in question allowed defendant's appellate attorney to withdraw and granted defendant leave to proceed *pro se*. The order further stated "[defendant] may not stand on his response to the motion to withdraw, but instead must incorporate it into a brief in accordance with Supreme Court Rules 341 and 342." Additionally, the order provided due dates for the parties' briefs. Nothing in the order prohibited defendant from including additional issues in his appellate brief.

¶ 41                                3. Cause and Prejudice

¶ 42    Finally, we address the State's position that, even if we consider the merits, defendant cannot establish the requisite cause or prejudice necessary to file a successive post-conviction petition. As discussed earlier, to obtain leave to file a successive post-conviction petition, defendant was required to show *both* "cause" for the failure to raise the claim in the initial petition *and* that "prejudice" resulted from the failure to raise the claim. *Dorsey*, 2021 IL 123010, ¶ 32; *Britt-El*, 206 Ill. 2d at 339. "Cause" is shown by a defendant identifying an objective factor that impeded his or her ability to raise a specific claim during the initial post-conviction proceeding. 725 ILCS 5/122-1(f) (West 2020); *Dorsey*, 2021 IL 123010, ¶ 32. "Prejudice" is shown by demonstrating that the claim not raised during the initial proceeding so infected the trial that the resulting conviction or sentence violated due process. 725 ILCS 5/122-1(f) (West 2020); *Dorsey*, 2021 IL 123010, ¶ 32.

¶ 43    In this appeal, defendant claims that he was denied due process during the proceedings on his original post-conviction petition because the trial court (1) declined to consider Vogt's "judicial admission that false evidence (States [*sic*] Exhibit PH13) and perjury were knowingly used to obtain his informations [*sic*] and conviction" and (2) disregarded his right to "compulsory process" for Vogt and Lentz, thereby precluding his ability to develop evidence in support of his post-conviction petition. Defendant asserts that he established cause for not raising these claims earlier since the basis of the claims stems from actions taken by the trial court at the proceedings on his initial post-conviction petition. Defendant further asserts that he established prejudice because the trial court's rulings amounted to violations of due process. We disagree.

¶ 44    First, as discussed earlier, defendant could have raised these issues in the appeal from the denial of his original post-conviction petition. He did not. Therefore, we reject defendant's argument that he established cause for failing to raise these issues in the initial post-conviction proceedings. See *Blair*, 215 Ill. 2d at 443-44; *Ayala*, 2022 IL App (1st) 192484, ¶ 108; *Doris*, 319 Ill. App. 3d at 582.

¶ 45    Second, defendant has failed to establish the "prejudice" prong. Defendant suggests that had he been allowed to subpoena the state's attorneys and develop the record, he could have established his theory that the prosecution fabricated and knowingly used false gunshot evidence to obtain the charges and convictions against him. As discussed above, however, the premise underlying defendant's claims, *i.e.*, that the State knowingly fabricated and used false gunshot evidence to charge and convict defendant, has already been addressed and rejected by the trial court and this court. See *Ford*, 2015 IL App (2d) 120929-U, ¶¶ 25-36; *Ford*, No. 2-07-0678 (2009) (unpublished order under Supreme Court Rule 23). Furthermore, we reject defendant's claim that Vogt either admitted or stipulated that the State knowingly fabricated and used false gunshot

evidence. In support of this claim, defendant refers to Vogt's objection at the hearing on defendant's subpoena motions during the proceedings on his original post-conviction petition. At that time, Vogt said that all of defendant's claims in his original post-conviction petition were based on matters of record. Vogt noted that the recording of Wanda's preliminary hearing testimony and PH13 were in evidence. Vogt also noted that the arguments that he and Assistant State's Attorney Lentz made were in the record. We read nothing in Vogt's remarks that constitutes either an "admission" or a "stipulation" that the State knowingly fabricated and used false gunshot evidence to charge and convict him.

¶ 46    Based on the foregoing, we conclude that defendant has failed to establish both cause for the failure to raise this claim in the initial petition and prejudice resulting from the failure to raise the claim. As such, the trial court did not err in denying defendant's request for leave to file a successive post-conviction petition.

¶ 47                                III. CONCLUSION

¶ 48    For the reasons stated, we affirm the judgment of the circuit court of Stephenson County.

¶ 49    Affirmed.